1855

Danny J. MOBLEY, Respondent v. Patricia A. MOBLEY, Appellant.
(420 S.E. (2d) 506)

Court of Appeals

H. *Fred Kuhn, Jr.,* of *Moss, Dore, Kuhn & McIntyre,* Beaufort, *for appellant.*

*Roberts Vaux,* of *Vaux, Marscher & Smith,* Hilton Head Island, *for respondent.*

Heard June 10, 1992.

Decided July 20, 1992.

GOOLSBY, Judge:

Patricia A. Mobley appeals from an order of the family court granting her a divorce from Danny J. Mobley. The issues on appeal relate to equitable division, child support, alimony, contempt, and attorney fees. We reverse in part, affirm in part, and remand.

The Mobleys were married in 1977. During the early years of the marriage, Mr. Mobley earned $7,000 a year working part-time at Bull Island Plantation. He also operated a restaurant for a year and a half. During these early years, Mrs. Mobley worked for Southern Bell. While Mr. Mobley was running

the restaurant, she worked nights and weekends there as well.

In the early 1980s, the Mobleys moved onto Bull Island. Mr. Mobley testified he began working full-time there in 1983 and at that time he was earning approximately $20,000 a year. Mrs. Mobley testified she was earning $38,000 a year when they moved onto the island.

Since 1981, the Mobleys have deposited their respective earnings in separate bank accounts. Mrs. Mobley testified she purchased groceries and clothing for the family with her earnings. Mr. Mobley's employer provided them with a furnished house that they lived in free of charge. The employer also paid for the Mobleys' utilities.

Mr. Mobley testified Mrs. Mobley took care of their daughter's day-to-day needs, cooked for the family, and occasionally worked in the yard. With the exception of a year and a half period in which they employed a housecleaner, Mrs. Mobley did the housework.

At the time of the divorce hearing, Mrs. Mobley was earning $25,000 a year at Southern Bell while Mr. Mobley was earning $31,000 a year as the manager of Bull Island Plantation. Mr. Mobley also received a truck allowance of $200 per month. He occasionally received $5,000 "gifts" from his employer for doing a good job. Mr. Mobley also earned $12,000 a year in rental income.

During the marriage, Mr. Mobley purchased one tract of land that had a net value of $110,000 at the time of the hearing. Mr. Mobley purchased another tract of land that was worth between $200,000 and $247,000 at the time of the hearing. Mr. Mobley owes $108,000 on the interest-free loan his employer gave him to purchase this land. Mrs. Mobley did not contribute any money toward either tract of land. Mr. Mobley also purchased stock worth $21,600 during the marriage.

In 1985, Mrs. Mobley borrowed approximately $35,000 to build an addition to her mother's home. At the time of the hearing, the balance on the loan was $28,000. Mr. Mobley did not make any payments on this loan. Mrs. Mobley also has a vested retirement plan.

The family court awarded Mrs. Mobley her retirement plan, the AT&T stock she acquired before the marriage, her interest in her mother's home, and her motor vehicle. It awarded

Mr. Mobley both tracts of land, his stock, and his motor vehicles. The family court gave Mrs. Mobley custody of the parties' child and ordered Mr. Mobley to pay $441.60 a month in child support. It also ordered him pay $2,000 of Mrs. Mobley's attorney fees and costs. The family court denied Mrs. Mobley's request for alimony.

## I.

Mrs. Mobley argues the family court erred in dividing the marital property by failing to identify the marital property, by failing to identify the proportionate contributions of each party to the acquisition of the marital property, and by failing to divide the marital property equitably.

In dividing marital property, the family court must: (1) identify the marital property, both real and personal, to be divided between the parties; (2) determine the fair market value of the identified property; (3) identify the proportionate contributions, both direct and indirect, of each party to the acquisition, preservation, depreciation, or appreciation in value of the marital property, their respective assets and incomes, and any special equities they may have in the marital property; and (4) provide for an equitable division of the marital property, including the manner in which the distribution is to take place. *Toler v. Toler*, 292 S.C. 374, 356 S.E. (2d) 429 (Ct. App. 1987); S.C. Code Ann. § 20-7-472(3) (Supp. 1991).

The family court failed to identify the Mobleys' marital property. Although the Mobleys accumulated several items of property during the marriage, the family court erroneously determined "[t]hey acquired no joint property during the marriage." *See* S.C. Code Ann. § 20-7-473 (Supp. 1991) (subject to certain exceptions, marital property is all real and personal property acquired during the marriage and which is owned as of the date of filing or commencement of marital litigation, regardless of how legal title is held). On appeal, Mr. Mobley concedes all of the property owned by them, except the AT&T stock acquired by Mrs. Mobley before the marriage, is marital property.

The family court also failed to determine the indirect contributions of the parties to the acquisition of the marital property. The family court merely stated, "[N]either party made

any meaningful *monetary* contribution" to the acquisition of property by the other and neither party "was deprived or sacrificed as a result of the other's separate and individual activities." (Emphasis ours.)

We, therefore, reverse the family court's division of the Mobleys' property and remand the issue for redetermination. In redetermining the property division, the family court shall identify the marital property and the indirect contributions of each party to the acquisition, preservation, depreciation, or appreciation in value of the marital property. S.C. Code Ann. § 20-7-472(3) (Supp. 1991); *see Rowland v. Rowland,* 295 S.C. 131, 367 S.E. (2d) 434 (Ct. App. 1988) (where the family court failed to make findings on the parties' contributions and on other factors, the Court of Appeals remanded the issue of equitable distribution).

In regard to indirect contributions, the family court shall particularly consider whether Mrs. Mobley made any contribution as a homemaker; and, if it finds she did so, the family court must consider the quality thereof. *See* S.C. Code Ann. § 20-7-472(3) (Supp. 1991) (one of the factors to consider in dividing marital property is the property's value and "the contribution of the spouse as homemaker; provided, that the court shall consider the quality of the contribution as well as its factual existence"); *cf. Jasper v. Jasper,* 107 Wis. (2d) 59, 318 N.W. (2d) 792 (1982) (despite a statute directing courts to consider homemaker contributions and to presume that marital property should be divided equally between the parties, a court did not abuse its discretion in awarding less than fifty percent of the property to the wife where the husband contributed to the care of the parties' child and the family ate meals out between four and six evenings per week).

II.

■ Mrs. Mobley argues the family court erred in awarding only $441.60 per month in child support.

The family court apparently computed Mr. Mobley's child support obligation under the South Carolina Child Support Guidelines by using the gross monthly income stated on his financial declaration. *See* South Carolina Child support Guidelines (1990) (child support awards are based on the gross income of the parents). Mr. Mobley's financial declaration only

includes income from his salary, dividends, and rent. It does not include any amount for his employee benefits, such as bonuses, truck allowances, housing, and utilities. Mr. Mobley testified, however, he thinks the housing, utilities, and insurance his employer provides him are worth $500 a month.

Mr. Mobley contends his employee benefits should not be considered in determining his child support obligation because he has no tax liability for the value of the housing and because he has no guarantee either that he will remain in his present job or that he will continue to receive bonuses. We find these contentions without merit. *See* 27C C.J.S. *Divorce* § 674, at 299 (1986) (a child support award may be based on income that was not reported for taxation purposes, regardless of its taxability or deductibility from income for tax determination purposes); Guidelines, *supra*, at 3 ("Gross income includes income from *any* source including income from salaries, wages, . . . bonuses, rents, [and] dividends. . . .") (emphasis ours); 27C C.J.S. *Divorce, supra* § 675, at 301 (in determining the amount of child support to award, consideration may be given to the earning capacity of the noncustodial parent, as indicated by past or anticipated earnings); *cf.* Guidelines, *supra*, at 3 (although the Guidelines do not take into account in-kind income "the court should count as income expense reimbursements or in-kind payments received by a parent from self-employment or operation of a business if they are significant and reduce personal living expenses, such as a company car, free housing, or reimbursed meals"). We also note Mr. Mobley's employer testified Mr. Mobley is "an extraordinary, satisfactory employee" and he has "no plans to get rid of [Mr. Mobley]."

We, therefore, reverse the family court's award of $441.60 a month in child support and remand the issue for redetermination. In redetermining child support, the family court shall consider the value of Mr. Mobley's employee benefits.[1]

## III.

Mrs. Mobley argues the family court erred in finding she violated a restraining order by selling some stock and trading her vehicle for a van in June 1989. We agree.

---

[1] Mrs. Mobley's attorney argued on appeal the amount of child support should be $610 a month.

In June 1989, the family court issued a *pendente lite* order prohibiting either party from disposing of any property. At the divorce hearing, Mrs. Mobley testified she sold some of her AT&T stock and used the money for a down payment on a van. Nothing in the record indicates she sold the stock after the *pendente lite* order was issued.

## IV.

Mrs. Mobley argues the family court erred in finding she unnecessarily inflated her expenses by borrowing money to make advance payments on her home loan. We disagree.

Mrs. Mobley testified she borrowed $4,000 and "took most of [her] money and paid [her] house payment in advance." We think the family court could reasonably infer from this testimony that Mrs. Mobley unnecessarily inflated her expenses.

## V.

Mrs. Mobley argues the family court erred in failing to hold Mr. Mobley in contempt of the June 1989 *pendente lite* order.

Because the family court did not address this issue in its order and Mrs. Mobley made no motion asking the court to do so pursuant to Rule 59(e), SCRCP, we also will not address this issue. *See Talley v. South Carolina Higher Education Tuition Grants Committee*, 289 S.C. 483, 347 S.E. (2d) 99 (1986) (an issue raised but not ruled on by the trial court is not preserved and the complaining party must move before the trial court to amend the judgment pursuant to Rule 59(e), SCRCP).

## VI.

Mrs. Mobley argues the family court erred in determining she is not entitled to alimony.

The decision to grant or deny alimony rests within the sound discretion of the family court and the court's decision will not be disturbed on appeal absent an abuse of that discretion. *Williams v. Williams*, 297 S.C. 208, 375 S.E. (2d) 349 (Ct. App. 1988). We find no abuse of discretion here. Mrs. Mobley is young, healthy, and capable of supporting herself.

## VII.

Mrs. Mobley argues the family court erred in awarding her only $2,000 in attorney fees and costs. The family court based the award in large measure on the beneficial results obtained by Mrs. Mobley in this litigation. We, therefore, reverse the family court's attorney fee award and remand the issue for redetermination in light of our reversal of the family court's equitable division and child support awards. *See Cathcart v. Cathcart,* — S.C. —, 414 S.E. (2d) 811 (Ct. App. 1992) (where the family court expressly linked the attorney fee award to the beneficial results obtained by the parties in the litigation, the amount of the award merited reexamination by the family court).

Reversed in part; affirmed in part; and remanded.

CURETON, J., and LITTLEJOHN, Acting Judge, concur.

