THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT
 BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE
 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Giselle Bailey
 Rogers, Respondent,
 v.
 Gregory Rogers, Appellant.
 
 
 

Appeal From Greenville County
 Aphrodite K. Konduros, Family Court Judge
Unpublished Opinion No. 2007-UP-538
Submitted November 1, 2007  Filed
 November 29, 2007
AFFIRMED AS MODIFIED

 
 
 
 Deborah  Murdock, of Greenville, for
 Appellant.
 John Michael Turner, Sr., of Laurens, for
 Respondent.
 
 
 

PER CURIAM: 
 This is an appeal of a divorce decree.  Gregory Rogers (Husband) argues the
 family court erred in its findings concerning child support and alimony,
 apportionment of the marital assets and marital debt, grounds for the divorce,
 and attorneys fees and costs.  We affirm as modified.[1]
FACTS AND PROCEDURAL HISTORY
Husband and Giselle Bailey Rogers (Wife)
 married on June 29, 1991.   They have one son, who was born in 1994, and one
 daughter, who was born in 2001.  Wife is an elementary schoolteacher.  Husband is
 a State Farm insurance agent with various income-producing side ventures,
 including the sale of vehicles and the rental of two tractor-trailer trucks.  
 
In
 1998, Wife filed for divorce, alleging Husband had infected her with Chlamydia;
 however, the action was dismissed when the parties reconciled.  In 2004, the
 parties separated again, and Wife filed the present action requesting, among
 other relief, a divorce on the ground of adultery, temporary possession of the
 marital home, custody of the parties children, child support and alimony,
 equitable division of the marital property, and attorneys fees.  In his answer
 and counterclaim, Husband denied the material allegations of the complaint and
 counterclaimed for custody of the children and possession of the marital home.
On September 20, 2004, the family court
 held a temporary hearing, during which the parties announced an agreement on
 the issues of custody, visitation, discovery, and child support, leaving only
 the issues of temporary possession of the marital home, attorneys fees, and
 alimony for the court to decide.  Pursuant to the parties agreement, the
 family court granted Wife custody of the children with reasonable visitation to
 Husband, authorized full discovery, and ordered Husband to pay child support of
 $1,000.00 per month directly to Wife.  The family court also granted Wife
 temporary possession of the marital home, directed Husband to pay one half of the
 mortgage payment, and held alimony and attorneys fees in abeyance with the
 proviso that these issues would be subject to retroactive application. 
Husband
 apparently failed to pay child support as ordered by the court; therefore, on
 February 8, 2005, the family court issued an order requiring all future child
 support to be paid through the clerk of court.  On March 29, 2005, a second
 temporary hearing took place, resulting in an order modifying visitation, appointing
 a guardian ad litem, and making certain provisions concerning extracurricular
 activities of the parties son.  In addition, pursuant to a motion to compel
 filed by Wife, the family court ordered Husband to produce a statement of his
 retirement fund with State Farm and granted Wife $1,800.00 in attorneys fees
 incurred from the motion.
A final
 hearing in the matter took place on March 15, 2006.  By order dated June 26,
 2006, the family court granted Wife a divorce on the ground of adultery,
 approved the parties agreement regarding custody and visitation, required
 Husband to pay child support of $1,484.00 per month plus $550.00 per month
 towards the childrens school and daycare expenses, set alimony at $2,000.00
 per month retroactive to September 27, 2004, and directed Husband to pay the
 alimony arrearage of $40,000.00 at $500.00 per month.  In addition, the family
 court ordered Husband to pay $19,650.00 to Wifes attorney, representing the
 balance of her request for attorneys fees of $22,950.00 less his prior
 payments of $3,300.00
STANDARD OF REVIEW
In appeals from the family court, an
 appellate court has the authority to find the facts in accordance with its own
 view of the preponderance of the evidence.  Wooten v. Wooten, 364 S.C.
 532, 540, 615 S.E.2d 98, 102 (2005) (citing Rutherford v. Rutherford,
 307 S.C. 199, 414 S.E.2d 157 (1992) and Owens v. Owens, 320 S.C. 543,
 466 S.E.2d 373 (Ct. App. 1996)).  This broad scope of review does not,
 however, require the appellate court to disregard the findings of the family
 court.  Id. (citing Stevenson v. Stevenson, 276 S.C. 475, 279
 S.E.2d 616 (1981)).  Neither is the appellate court required to ignore the
 fact that the family court, who saw and heard the witnesses, was in a better
 position to evaluate their credibility and assign comparative weight to their
 testimony.  Id. (citing Cherry Thomasson, 276 S.C. 524, 280
 S.E.2d 541 (1981)).  Moreover, when an
 appellate court chooses to find facts in accordance with its own view of the
 evidence, the court must state distinctly its findings of fact and the reason
 for its decision.  Dearybury v. Dearybury, 351 S.C. 278,
 283, 569 S.E.2d 367, 369 (2002) (citing Rule 220(b)(1), SCACR).
LAW/ANALYSIS
1.  Husband first alleges
 that, for purposes of calculating child support, the family court improperly
 imputed income to him that was not supported by the evidence.  In response,
 Wife argues the family court did not impute income to Husband but simply added
 non-reported and non-taxed income to the amount Husband contended was his
 current income per month.  We agree with Wife that the family court committed
 no abuse of discretion in including these amounts to determine Husbands income
 potential, but modify the base amount to which these figures were added.
According to
 Husbands most recent financial declaration, his current monthly income was
 $10,314.00.  At trial, Husband testified he arrived at this figure by averaging
 his taxable income as reflected on his tax returns from 2002 through 2004. 
 Inexplicably, however, the family court stated that Husband now contends that
 his income is $10,368.97 per month . . . .  We were unable to find any
 corroboration in the record on appeal to support this statement, and Wifes counsel
 has not directed our attention to where in the record such evidence appears;
 therefore, we hold any additions to Husbands monthly income should have
 supplemented a base figure of $10,314.00, not $10,368.97.
As to the additions
 themselves, however, we hold the family court acted within its discretion in
 including them as income to Husband.  As noted in the appealed order, these
 amounts included a car benefit of $6,600.00 per year and payment of up to
 $15,000.00 per year of gasoline bills, insurance premiums, water bills, and
 credit card expenses for personal use.  Husband admitted to receiving these
 benefits.  Whether or not he was required to report them as income for income
 tax purposes, they inured to his advantage and were properly considered as
 income for purposes of setting child support.  See S.C. Code Ann. Regs. 114-4720(A)(2) (Supp. 2006) (stating
 that, in determination of child support awards, [u]nreported case income
 should also be included if it can be identified.); id. 114-4720(A)(3)(C) (noting that, although in-kind income is not included in
 gross income for determining child support, the court should count as income
 expense reimbursements or in-kind payments received by a parent from . . .
 operation of a business if they are significant and reduce personal living
 expenses . . . .); Mobley v. Mobley, 309 S.C. 134, 138-39, 420 S.E.2d
 506, 509-10 (Ct. App. 1992) (holding the custodial parent was entitled to a
 redetermination of a child support award because the family court failed to
 include in the noncustodial parents income any amount for his employee
 benefits).
Husband
 further takes issue with the inclusion of rental income on one of his
 tractor-trailer trucks in his monthly income, alleging the payments he was
 receiving were simply used to make the loan payments on the vehicles and the
 payments did not come in on a regular basis.  We find no abuse of discretion. 
 The family court noted (1) the amount reflecting this income actually covered
 the rental of only one of two trucks; and (2) Husband had listed this amount on
 his initial financial declaration, but omitted it from his later financial
 statement.  In our view, the family courts inclusion of rental income for only
 one tractor-trailer truck was a reasonable compromise offsetting the sporadic
 receipt of the payments and any expenses associated with the trucks.
Applying
 the revised figure for Husbands monthly base income, Husbands child support
 payments under the South Carolina Child Support Guidelines should be $1,408.00
 per month, rather than $1,484.00 per month as ordered by the family court.  We
 therefore modify the appealed order to reflect this finding. 
2.  Husband next
 argues the family court erred in requiring him to pay $550.00 per month for the
 younger childs expenses at a Montessori school.  In support of this argument,
 he asserts (1) this payment was not included in the parties agreement; (2) the
 amount was placed into the child support calculation twice and treated as a
 twelve-month expense when it was actually a nine-month expense; (3) it was
 inequitable to require him to pay these expenses because Wife is entitled to
 claim these same expenses as daycare; and (4) he should have been given credit
 for paying expenses associated with the older childs participation in athletics. 
 We find no reversible error.
Although
 the payment of the younger childs Montessori school expenses was not part of
 the parties agreement, Wife testified she desired Husband to assist with these
 expenses, of which she herself was ordered to pay a proportionate share, plus the
 fee for two to three weeks of summer camp for the younger child.  Furthermore, as
 shown on line 10 of the child support worksheet used by the family court,
 Husband was given a credit of $550.00 as an adjustment to his child support
 obligation.  As to Husbands final argument, he has neither directed our
 attention to evidence in the record upon which the family court should have
 based an appropriate adjustment to his child support payments based on his
 contributions toward expenses incurred by the older child nor cited any
 supporting authority for his assertion that he was entitled to such a credit.  See First
 Sav. Bank v. McLean, 314 S.C. 361, 363, 444 S.E.2d 513, 514 (1994) (stating the appellant was deemed to have abandoned an issue for which he
 failed to provide any argument or supporting authority).
3.  Husband next
 argues he should not have to pay alimony and child support through the clerk of
 court, arguing he incurs additional costs of $3,984.00 per year in court fees. 
 He suggests he should be allowed to set up an automatic draft from his bank
 account to pay alimony and child support directly to Wifes bank account.  We
 find no abuse of discretion in the family courts refusal to let him make his
 own arrangements for these payments.  At the initial temporary hearing, the
 family court allowed him to pay child support directly to Wife; however, he
 failed to make payments as ordered, which necessitated an additional hearing to
 require him to make his payments through the court.
4.  Husband complains the
 family court overvalued his State Farm account because he did not invest the
 funds in an individual retirement account and because he would not receive
 whatever benefits he was entitled to until he reached age 55 or 60, provided he
 had worked 20 years.  On appeal, he contends that, instead of the figure of
 $78,069.00 that appears on Wifes asset list as the value of this account, the
 account should have been assigned a present value of $15,000.00.  Wife has not
 provided any counterargument on this point in her brief; therefore, we modify
 the appealed order to find that the value of the State Farm residual account
 awarded to Husband is $15,000.00.
5. 
 Husband further alleges Wifes half-interest in a house that she purchased with
 her father during the marriage should have been included in the marital
 estate.  We disagree.  The fact that the property was acquired during the
 marriage raises only a presumption that it is marital.  See Fuller v.
 Fuller, 370 S.C. 538, 551, 636 S.E.2d 636, 643 (Ct. App. 2006) (Because of the general presumption
 that property acquired during the marriage is an asset of the marriage, the
 burden to show an asset is nonmarital is
 upon the party claiming the nonmarital status.).  Here, the family court apparently determined Wife
 carried her burden to show the interest was not marital, and the evidence
 supports this finding.  Wife testified her father resided in the house,
 intended to stay there indefinitely, and was responsible for the expenses
 associated with it.  She also indicated her name was on the title only because
 she co-signed the loan to purchase the home.
6.  Notwithstanding our adjustment of the value of Husbands State
 Farm residual account, we affirm the family courts division of the remaining
 marital assets and debt.  
At the outset, we note the family court
 did not, as required by statute, make findings of fact from credible evidence
 of the value of property and services before allocating the marital assets and
 debt.  S.C. Code Ann. § 20-7-474(1) (Supp. 2006).  Instead, the court
 apparently did not attempt to value the marital assets either individually or
 collectively, but instead divided the marital property in-kind based on how a
 particular item was titled or testimony from the parties regarding who should
 receive it.  Accordingly, Wife received the marital home and furnishings, her
 2004 Chevrolet Tahoe, various American Express accounts, and her State retirement
 and 401k accounts.  Similarly, Husband received his interest in certain
 commercial properties, the residual value of his State Farm account, and all
 other vehicles.  As to debts incurred during the marriage, the family court
 required Husband to be responsible for a federal tax lien of $62,854.20 that
 attached to the marital home as a result of his failure to file tax returns and
 pay taxes for 2002, 2003, and 2004.
According to the inventory of marital property submitted
 by Wife, as amended by the revised value of the State Farm residual account, she
 received assets totaling $180,391.03 and Husband received assets totaling $151,876.00;
 therefore, the total value of the divided assets according to Wife was $332,267.03. 
 In contrast, Husband submitted an inventory valuing the marital assets Wife
 received at $200,391.44[2] and those he received at $135,876.00[3];
 thus, the combined value of the assets using Husbands valuation was $336,267.44. 
 Under the evidence presented to the family court, Wifes share of the marital
 estate, then, ranges from 54.29 percent to 59.59 percent.  Similarly, Husbands
 share ranges from 40.41 percent to 45.71 percent.  We hold the division is reasonable under the
 circumstances of this case, which include the family courts recognition that
 the marital estate was somewhat difficult to value due to the husbands
 evasive answers and obvious attempts not to disclose assets and income. 
 
7.  Husband further contends
 that, because the tax lien was incurred before the commencement of the marital
 litigation, the family court should not have made him solely responsible for
 discharging it.  Although Husband cites case law supporting his argument that
 the lien was a marital debt and argues at length about the hardship he would
 suffer from having to pay it, he does not contest the family courts findings
 that the obligation resulted from his refusal and failure to timely file tax
 returns and pay taxes and that Wife had been filing her tax returns and paying
 her taxes after she became aware Husband was avoiding his tax obligations.[4] 
 Under these circumstances, we find no abuse of discretion in the family courts
 decision to assign Husband responsibility for the lien.  See S.C. Code
 Ann. § 20-7-472(2) (Supp. 2006) (requiring the family court, in apportioning
 the marital estate, to give appropriate weight to marital misconduct or fault
 of either or both parties, whether or not used as a basis for a divorce as
 such, if the misconduct affects or has affected the economic circumstances of
 the parties); Woodside v. Woodside, 290 S.C. 366, 374, 350 S.E.2d 407,
 412 (Ct. App. 1986) ([T]he conduct factor becomes important in equitable
 distribution when the conduct of one party to the marriage is such that it
 throws upon the other party marital burdens beyond the norms to be expected in
 the marital relationship.).  
8.  Husband next argues the
 alimony award was excessive in that it placed Wife in better circumstances than
 she enjoyed during the marriage.  In support of this argument, he asserts Wife
 is young, well educated, gainfully employed, and in good health.  He also
 points to the fact that, after the divorce, she retained considerable
 nonmarital property and had generous retirement accounts and benefits as a
 state employee.  We find no error.
In the appealed
 order, the family court gave full consideration to the statutory factors on
 which to base an alimony award.  See S.C. Code Ann. § 20-3-130(c) (Supp.
 2006).  Significantly, the court noted (1) the parties had been married fifteen
 years; (2) Husband earned far more than Wife; (3) Husbands misconduct caused
 the breakup of the marriage; (4) during the marriage Wife enjoyed a fine
 lifestyle that included a home in an upscale neighborhood and trips to exotic
 locations; (5) Husband would receive a tax benefit because he could deduct the
 alimony payments; and (6) neither party had any support obligations from a prior
 marriage.  Considering these findings, as well as the considerable difficulties
 in ascertaining Husbands income, we disagree with Husband that the family
 court abused its discretion in determining the alimony award.  See Craig v. Craig, 365 S.C. 285, 292, 617 S.E.2d 359, 362
 (2005) (An award of alimony rests within the sound discretion of the family
 court and will not be disturbed absent an abuse of discretion.).
9.  Husband further contends
 the award of retroactive alimony was excessive, especially given that he paid
 one half of the mortgage payments on the marital home while the action was
 pending.  We disagree.  Wife had requested alimony at the temporary hearing,
 and Husband had notice from the first temporary order that the issue of alimony
 would be decided at the final hearing but was subject to retroactive
 application.  In determining retroactive alimony, the family court evidently
 relied on the same factors that it considered in determining periodic alimony. 
 As to Husbands argument that he should receive a credit toward the retroactive
 alimony award for the payments he made on the mortgage on the marital home, we
 agree with Wife that these payments, which Wife was required to make as well,
 were ordered with the objective of preserving a marital asset rather than to
 provide support and maintenance.
10.  Husband next argues the family court erred in granting Wife a
 divorce based on adultery, asserting Wifes testimony alone was insufficient
 evidence to support a finding that he had been unfaithful.  He further contends
 that any reliance on Wifes testimony that he had infected her
 with Chlamydia was improper because the parties reconciled after that
 occurrence.  
We
 have some concern as to whether the evidence Wife offered to support her claim
 for a divorce on the ground of adultery was sufficient.  See McElveen
 v. McElveen, 332 S.C. 583, 596-97, 506 S.E.2d 1, 7-8 (1998) (affirming the
 family courts refusal to find a party had committed adultery, notwithstanding
 numerous telephone calls between the party and her alleged paramour during late
 hours, records of weekend trips taken by the party and her alleged paramour,
 and evidence of attempts to alter or eradicate these records).  In any event, we
 note the family court, with Wifes consent, granted Husbands request to amend
 his pleadings to request a divorce on the ground of a one-year separation.  Because
 there was evidence that the parties had been separated at least one year before
 the final hearing, we affirm the grant of a divorce, but modify the decision to
 hold this relief is based on a one-year separation.
11.  Finally, Husband
 contends the award of attorneys fees to Wife was excessive, especially
 considering that she had allegedly been uncooperative regarding his contact
 with the children and her behavior necessitated a second temporary hearing and
 the appointment of a guardian ad litem.  We disagree.  In our view, the family court adequately considered the requisite
 factors under Glasscock v. Glasscock, 304 S.C. 158, 161, 403 S.E.2d 313,
 315 (1991), in determining the amount to award Wife as attorneys fees.  In
 particular, we note Husbands refusal to reveal his income and assets prolonged
 the resolution of the issues on the case, causing Wife to incur legal expenses
 that would not have been necessary but for Husbands failure to cooperate.  As
 to Wifes alleged interference with visitation, we hold the evidence shows she
 did not intend to prevent Husband from having a meaningful
 relationship with his children, but was concerned that their sons
 participation in school and church was declining because of his athletic
 pursuits.  Finally, we note that Wife was the prevailing party on most of the
 issues in this action.  We therefore uphold the award of attorneys fees to
 Wife.
AFFIRMED AS MODIFIED.
HEARN, C.J.,
 KITTREDGE and THOMAS, JJ., concur.

[1]  We decide this case without oral argument pursuant
 to Rule 215, SCACR.
[2]  In valuing the marital residence, Husband subtracted
 the amount of a tax lien that the family court ordered him to pay; however, the
 figure we have given here does not reflect this debt.
[3]  In his inventory, Husband indicated the State Farm
 residual account had a zero value and the total value of Husbands assets, as
 submitted by Husband, has been amended in this opinion to reflect that the
 State Farm account has a value of $15,000.00.
[4]  It appears from the returns included in the record
 on appeal that Husband had returns professionally prepared for the years in
 question; however, the date of tax preparers signature on the returns for 2002
 and 2003 is March 6, 2006, just shortly before the final hearing.  There is no
 signature at all on the return for 2004.