683 P.2d 319

**In re the Marriage of Ruby P. MILLER, Petitioner-Appellee,**

v.

**Don L. MILLER, Respondent-Appellant.**

**No. 1 CA–CIV 7227.**

Court of Appeals of Arizona, Division 1, Department A.

May 15, 1984.

Tupper, Schlosser, Schulz & Spaw, P.A. by Gerald D. Tupper, Phoenix, for petitioner-appellee.

McGroder, Pearlstein, Peppler & Tryon, P.C. by David M. Heller, Phoenix, for respondent-appellant.

## OPINION

GRANT, Presiding Judge.

This appeal is from a decree of dissolution of marriage entered between Ruby Miller and Donald Miller. The sole issue on appeal is whether the trial court abused its discretion in its division of Donald's employment retirement plan.

The background facts are simple and undisputed. Ruby and Donald Miller were married in 1966. In 1969 Donald joined the Arizona Department of Public Safety (DPS). As an employee of DPS Donald automatically enrolled in the Public Safety Personnel Retirement System. A.R.S. § 38–843(C) (Supp.1983). Under the retirement plan the employee contributes a fixed percentage of the employee's gross pay and the employer also makes a contribution. A.R.S. § 38–843 (Supp.1983). An employee is eligible for retirement benefits only after 20 years of service. A.R.S. § 38–844 (Supp.1983). If employment is terminated for any reason other than death or retirement, the member receives a lump sum payment equal solely to the member's accumulated contributions. A.R.S. § 38–846.02 (Supp.1983). Donald has remained a DPS employee since 1969.

On September 4, 1981, Ruby filed the instant petition for dissolution of marriage. After a hearing concerning the parties' assets, the trial court entered a decree of dissolution on May 27, 1983. The decree, in part, provided:

> 12. With respect to the Public Safety Personnel Retirement System of the Respondent, the Court finds that the date of the marriage is September 17, 1966; the date the Respondent became covered under the plan is August 4, 1969, and the number of months of marriage while covered by the plan is 161 months. The Court further finds that the same is community property and there is hereby set aside and confirmed to Petitioner as her

sole and separate property, a sum equal to one-half of the amount which is determined after calculating the fraction by which 161 is the numerator and the total number of months of enrollment in the plan is the denominator. This fraction shall be multiplied by the benefits received under the plan. Said sum shall be paid to Petitioner at the same time and in the same manner as paid to the Respondent.

Donald argues on appeal that the lower court erred in selecting the reserved jurisdiction method of valuation of the community's interest in the retirement plan. It is urged that the present cash value method should have been utilized and that under this method the wife is entitled to one-half of $18,631.90. Alternatively, the husband argues that under the formula applied by the trial court the wife may receive part of the husband's sole and separate property.

■ The apportionment of community property in a dissolution proceeding rests within the discretion of the trial court. *Lee v. Lee*, 133 Ariz. 118, 649 P.2d 997 (App. 1982). Such distribution need not be in kind or exactly equal, but must result in substantial equality. *Lindsay v. Lindsay*, 115 Ariz. 322, 565 P.2d 199 (App.1977). Generally pension or retirement benefits earned during the marriage are community property subject to equitable division by the trial court. *Van Loan v. Van Loan*, 116 Ariz. 272, 569 P.2d 214 (1977), *overruled on other grounds McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981).

■ In valuing the community's interest Arizona courts prefer the present cash value method if the rights can be valued accurately and the marital estate has sufficient assets to satisfy the non-employee spouse's claim without undue hardship on the employee spouse. *Johnson v. Johnson*, 131 Ariz. 38, 638 P.2d 705 (1981). The principal advantage of the present cash value over the reserved jurisdiction method is the avoidance of further entanglements with the ex-spouse and of the need for court supervision and enforcement of the decree. *Id.*

At trial, neither party produced any competent evidence concerning the present cash value of Donald's retirement plan at the time of dissolution. The only evidence relating to the plan is the following testimony from William Wiley, Jr., the Benefits Administrator of the Public Safety Personnel Retirement System:

Q. You are an expert in that field, are you not, sir?

A. In my opinion, yes, sir.

\* \* \* \* \* \*

A. As of the date of this computer printout, which was the period through—sorry, the pay period ending 12/17/82, he had a grand total of member accumulated contributions in the amount of $18,-631.90.

\* \* \* \* \* \*

Q. In other words, does that include the present cash value of the fund as of that date?

A. That is correct, his particular account.

\* \* \* \* \* \*

Q. Now tell the Judge what would happen if Mr. Miller retired today, how much—strike that.

If Mr. Miller retired as of December 17, 1982, how much money would he receive from the retirement plan?

A. He would receive a refund of member-accumulated contributions alone. It would cancel all credits in his account and he would cease to become a member of the Public Safety Personnel Retirement System.

Q. And what would the figure be he would receive?

A. $18,631.90, as indicated on the computer printout.

\* \* \* \* \* \*

Q. How long does one have to be on the force to retire?

A. He must be a contributing member of the retirement system for 20 years.

Q. Would it be fair to say that the only funds that are vested in Mr. Miller at this time are the amount that he has contributed into the fund as of this date?

A. That is correct.

Q. In other words, he is not entitled to interest or employer contributions as of this date?

■■ Contrary to the husband's assertion, this evidence did not establish the present cash value at $18,631.90. That figure represented solely the total contributions made by him. The present cash value of the community's interest is the actuarial current value. *Tester v. Tester*, 123 Ariz. 41, 597 P.2d 194 (App.1979). The fact that the rights have not vested is not controlling as it is the accrued retirement benefits which are divisible upon dissolution of a marriage. *Van Loan v. Van Loan.* Expert testimony is necessary to ascertain the present cash value which reflects contingencies including mortality, interest, probability of vesting, and probability of continued employment. *See Johnson v. Johnson.* Here no actuarial analysis was attempted by either party.

■ Faced with no evidence upon which to find the present cash value of the retirement plan and obviously no intention by the parties to provide such evidence, the trial court elected to use the reserve jurisdiction valuation method. Under the circumstances of this case we do not find the trial court's decision an abuse of discretion.

Donald Miller argues that the formula decreed by the trial court may act to deprive him of his sole and separate property. Under this defined benefit plan, an employee who retires after 20 years is entitled to monthly benefits equal to fifty percent of his "average monthly benefit compensation." A.R.S. § 38–845(A) (Supp.1983). By statute "average monthly benefit compensation" is defined as:

[T]he result obtained by dividing the total compensation paid to an employee during a considered period by the number of months, including fractional months, in which such compensation was received. The considered period shall be the three consecutive years within the last ten completed years of credited service which yield the highest average ....

A.R.S. § 38–842(4) (Supp.1983). It is posited that should Donald receive any pay increases after the date of the decree, then Ruby would unjustifiably benefit also.

■ The community is entitled to the services expended by the partners during marriage, not for labor before or after the marriage. *Garrett v. Garrett*, 140 Ariz. 564, 683 P.2d 1166 (App.1983). The formula employed by the trial court in the instant case derives from the formula first utilized in *Van Loan v. Van Loan*, 116 Ariz. 272, 569 P.2d 214 (1977), *overruled on other grounds McCarthy*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981).

■ Since both parties share the risk of death, termination, promotion or demotion, and salary increase or decrease, it is not an abuse of discretion to apply the *Van Loan* formula. We find language from the recent case of *Koelsch v. Koelsch*, 1 CA–CIV 6091 (Ariz.App. Feb. 28, 1984), applicable here:

The formula of dividing years of marriage under the plan by the years necessary to mature the benefits is sound if, in fact, the plan has not matured, because the covered spouse must continue working to obtain the promised benefits and thus realize the community asset.

*Id.* slip op. at 8–9. Where a spouse must forego the present enjoyment of the benefits, the spouse will share in any increase in benefits that continued employment produces, including an increase in pension benefits. *Cf. id.* (non-employee wife entitled benefits when employee husband's pension rights matured, but forced to wait until husband actually retires to receive benefits).

Under the guidelines we have just set out it is clear that Ruby Miller may appropriately benefit from any possible increase in the pension plan resulting from enactment of H.B. 2356; Laws 1983, ch. 300, § 8 (increasing from one percent to two percent the bonus given for each year served past twenty years).

For the foregoing reasons the judgment entered below is affirmed.

CORCORAN and FROEB, JJ., concur.