202 P.3d 481

**In re the Marriage of Therasa Leigh HETHERINGTON, Petitioner/Appellant,**

v.

**Thomas HETHERINGTON, Respondent/Appellee.**

**No. 1 CA–CV 07–0518.**

Court of Appeals of Arizona, Division 1, Department A.

June 19, 2008.

Review Denied Feb. 10, 2009.

S. Alan Cook, Phoenix, Attorney for Petitioner–Appellant.

Udall Shumway & Lyons, PLC By Darrell J. Hadder, Mesa, Attorneys for Defendant–Appellee.

## OPINION

EHRLICH, Judge.

¶ 1 This action follows the dissolution of the marriage of Therasa Leigh Hetherington (Wife) and Thomas Hetherington (Husband). Wife appeals the method that the family court used to divide Husband's retirement plan, the division of the proceeds from the sale of the marital residence, the calculation of Husband's income and the court's order that Wife reimburse Husband for her share of the custody evaluator's fee. We affirm the orders regarding the retirement plan and sales proceeds. We remand for the court's reconsideration of a calculation of Husband's income and thus reverse the child-support order. We also remand with instructions that the court include in the decree the same language that it set forth in a previous minute entry order regarding Wife's obligation to reimburse Husband for the evaluator's fees.

### FACTS AND PROCEDURAL BACKGROUND

¶ 2 The marriage was entered in 1988 and ended in 2005. The parties have three minor children. During the marriage, Husband was employed as a teacher and contributed to a retirement plan through the Arizona State Retirement System (ASRS). His employment benefits included insurance and employer contributions to his ASRS retirement plan. Wife was self-employed as a nurse on a contract basis; she did not have similar employment benefits.

¶ 3 During the dissolution proceedings, the parties listed the marital residence for sale for $850,000. They received an offer for $20,000 less than that amount based on the fact that the garage had not been built in conformity with the governing code. Husband wanted to accept the offer; Wife wanted to wait for a full-price offer. When Husband proposed reducing his share of the sales proceeds by $20,000 to close the deal, Wife agreed, and the house was sold for $830,000.

¶ 4 The family court appointed David McPhee, Ph.D., to perform a child-custody evaluation. Husband's mother paid the evaluator's fees, which totaled $15,600. Husband later testified that he had repaid his mother for a portion of these fees and that he intended to repay the full amount. Wife paid nothing.

¶ 5 The family court concluded that the community portion of Husband's ASRS plan was "best equitably divided by a Domestic Relations Order [DRO] with the applicable dates being the parties' marriage and the date of service of the Petition of Dissolution upon [Husband]." It also ordered Wife to reimburse Husband $10,000 for her share of the reduction in the sales price of the marital residence, finding that the parties' agreement that Husband assume the entire amount of the reduction was inequitable. The court then entered a child-support order based on Husband's wages without including any employment benefits as income to him. Finally, the court ordered Wife to reimburse Husband for her share of the evaluator's fees. Upon Wife's objection, however, the court agreed that Wife's obligation to reimburse Husband for her share of the evaluator's fees should be contingent upon an affidavit from Husband that he had paid the fees directly or by reimbursing his mother.

¶ 6 Wife filed a motion for new trial, which the trial court denied. She then timely appealed.

### DISCUSSION

A. *Division of Husband's Retirement Plan*

¶ 7 Wife argues that the family court abused its discretion by failing to award her the present cash value of her share in the community interest in Husband's retirement

plan in a lump sum. Husband counters that it was within the court's discretion to divide the plan by a DRO. He also contends that Wife failed to provide competent evidence of the present cash value of his retirement plan as of the date of the service of the petition of dissolution and that the court therefore could not calculate the present value of the community's interest in the plan.

¶ 8 As this court stated in *Boncoskey v. Boncoskey*, 216 Ariz. 448, 451 ¶ 13, 167 P.3d 705, 708 (App.2007):

> In apportioning community property between the parties at dissolution, the [family] court has broad discretion to achieve an equitable division, and we will not disturb its allocation absent an abuse of discretion. But the court may abuse its discretion if it commits an error of law in the process of exercising its discretion. In reviewing the [family] court's apportionment of community property, we consider the evidence in the light most favorable to upholding the [family] court's ruling and will sustain the ruling if it is reasonably supported by the evidence.

(Citations omitted.)

¶ 9 It is undisputed that a portion of this asset is community property subject to an equitable division between the parties. *See Johnson v. Johnson*, 131 Ariz. 38, 41, 638 P.2d 705, 708 (1981) (holding that pension rights, whether vested or non-vested, are community property insofar as they were earned during the marriage). The Arizona Supreme Court has recognized two methods for awarding the non-employee spouse her community interest in the employee spouse's retirement benefits: the present-cash-value method and the reserved-jurisdiction method. *Id.*

¶ 10 "The community share of the pension is determined by dividing the length of time worked during the marriage by the total length of time worked toward earning the pension." *Id.* at 41 n. 4, 638 P.2d at 708 n. 4 (citation omitted). Under the present-cash-value method, "the court determines the community interest in the pension, figures the present cash value of that interest, and awards half of that amount to the non-employee spouse in a lump sum[.]" *Id.* at 41, 638 P.2d at 708. Under the reserved-jurisdiction method, the court determines the community share of the pension, but it "retain[s] jurisdiction to award the appropriate percentage of each pension payment if, as, and when, it is paid out." *Id.; see also Boncoskey*, 216 Ariz. at 452 ¶ 18, 167 P.3d at 709.

¶ 11 The present-cash-value method relieves the former spouses from "further entanglement" with the possibility of court involvement and enforcement issues, an advantage that is most notable "when the anticipated date of retirement is far in the future." *Johnson*, 131 Ariz. at 41–42, 638 P.2d at 708–09. Indeed, the Arizona Supreme Court has expressed its preference for the present-cash-value method in cases in which "the pension rights can be valued accurately and if the marital estate includes sufficient equivalent property to satisfy the claim of the non-employee spouse without undue hardship to the employee spouse." *Id.* at 42, 638 P.2d at 709; *see also Boncoskey*, 216 Ariz. at 452 ¶ 17, 167 P.3d at 709 (citing *Johnson*). The court in *Johnson* approved the use of the present-cash-value method when the employee spouse's rights in his defined-contribution retirement plan were vested,[1] the employee spouse would not retire for another fifteen years and there was sufficient other property available to satisfy the non-employee spouse's interest in the pension. 131 Ariz. at 42–43, 638 P.2d at 709–10. This court in *Boncoskey* approved the use of the reserved-jurisdiction method when there were no community assets available to satisfy the non-employee spouse's community in-

---

1. "Under a defined contribution plan, a specified amount of money is periodically contributed to a fund by the employer, the employee, or both. This fund is invested and the earnings are divided proportionally among all plan participants. At any moment in time, there is a specific amount of money assigned to the account of each participant.... By contrast, under a defined benefit plan, the benefits are specified in advance, usually as a percentage of salary and related to years of service, and no account is kept for the employee." *Johnson*, 131 Ariz. at 42, 638 P.2d at 709.

terest and the pension rights had not yet matured. 216 Ariz. at 451–52 ¶¶ 16–17, 167 P.3d at 708–09.

¶ 12 Husband's plan is a defined-benefit plan, but the ASRS kept track of the contributions made on his behalf. These contributions were characterized as the "refund balance," the amount that Husband would receive if he ended his employment and opted to withdraw from the ASRS.[2]

¶ 13 The evidence showed the refund balance as of June 30, 2006 and November 14, 2006, but Wife failed to establish the refund balance as of the date of the service of the petition for dissolution. She now contends that there is no requirement that she prove the value of the retirement plan as of the date of service. However, because Husband had been working for his employer since before the marriage, the community's interest in the retirement plan began as of the date of the marriage, October 29, 1988, and ended on the date of service, December 21, 2005.[3] The date Wife used, November 14, 2006, included the contributions made on Husband's behalf after the date of service, which are clearly Husband's separate property. *See Koelsch v. Koelsch*, 148 Ariz. 176, 181, 713 P.2d 1234, 1239 (1986) (holding that a spouse's earnings after dissolution are separate property and that it is error to permit a former spouse to share the post-dissolution separate property earnings of the employee spouse).

¶ 14 In *Miller v. Miller*, 140 Ariz. 520, 683 P.2d 319 (App.1984), neither party presented evidence of the present cash value of the employee spouse's retirement plan at the time of the dissolution of their marriage; the only evidence was the refund balance on an earlier date. This court found no abuse of the superior court's discretion in applying the reserved-jurisdiction method to divide the husband's retirement plan given that neither

party had offered any evidence of the present cash value of the plan on the date of dissolution. *Id.* at 523, 683 P.2d at 322.

¶ 15 The analysis in *Miller* is persuasive. Based on the evidence presented to the family court, it was not an abuse of its discretion to order that Husband's retirement plan be divided by a DRO rather than the lump sum based on Wife's calculation which would have awarded her a portion of Husband's post-service separate property earnings.

### B. Reduction in Sales Price of Marital Home

¶ 16 The parties listed the marital residence for sale for $850,000 based on an appraisal conducted near the time of the listing that took into account the fact that the garage was not constructed in conformity with the pertinent building code. Within two weeks, the parties received a full-price offer, but, after the buyers' inspection revealed the problems with the garage, the buyers asked for a $20,000 reduction in price. Although Wife refused to lower the price, Husband was willing to take the difference from his share of the sales proceeds, and the parties agreed to this in writing.

¶ 17 The family court found that the $20,000 reduction in the price of the house was "necessary and reasonable[, and that] Wife's refusal to agree to the reduction in sales price was not reasonable." It concluded that Wife offered no evidence showing why such an agreement was equitable, and it ordered her to pay Husband $10,000 for her share of the reduction in sales price.

¶ 18 The terms of the agreement "are binding on the [family] court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties ... that the separation agreement is unfair." A.R.S.

---

**2.** Because of the nature of Husband's plan, this "refund balance" would have obviated the need for expert testimony regarding the present cash value of the benefits. Therefore, we need not address Husband's claim that Wife failed to offer expert testimony regarding the present cash value of his plan.

**3.** Pursuant to Arizona Revised Statutes (A.R.S.) §§ 25–211(2)(2007) and 25–213(B) (2007), all property acquired after the service of a petition for dissolution that results in a decree is the separate property of that spouse. Therefore, the date of service is relevant to determining when the community's interest in the retirement plan ended.

§ 25–317(B) (2007).[4] We will not disturb the court's distribution of community property absent an abuse of its discretion. *Sharp v. Sharp,* 179 Ariz. 205, 209, 877 P.2d 304, 308 (App.1994).

¶ 19 There was adequate evidence to support the family court's determination that Wife's refusal to sell the house for $830,000 was unreasonable and that she should not be compensated for taking the position that she did.[5] The parties' real-estate agent testified that the $830,000 sales price was fair. Also, the housing market was starting to slow; another full-price offer was uncertain, and the agent estimated that it could be several months before a sale. In fact, with a previous agent, the house had been listed at $890,000 and reduced to $825,000 for nearly two months without any offers before this agent listed it for $850,000 and sold it for $830,000.

### C. Husband's Income

¶ 20 Wife argues that the family court erred by failing to include within Husband's income the amounts that his employer contributes toward his annual benefits.[6] She also contends that income should have been imputed to Husband because he lives rent-free with his mother and for his mother's payment of $15,600 to the custody evaluator. Husband responds that the Arizona Child Support Guidelines ("Guidelines")[7] do not contemplate imputing the value of employment benefits as income to a parent. He also argues that there was no evidence that he did not pay his mother for rent or the evaluator's fee.

¶ 21 The family court found that Husband's monthly income was $4553, which consists of his regular wages and not his employee benefits. Although we will not disturb a court's award of child support absent an abuse of its discretion, *see In re Marriage of Robinson & Thiel,* 201 Ariz. 328, 331 ¶ 5, 35 P.3d 89, 92 (App.2001), we will review its "interpretation of the Guidelines *de novo* as a question of law." *Mead v. Holzmann,* 198 Ariz. 219, 220 ¶ 4, 8 P.3d 407, 408 (App.2000).

¶ 22 Under Section 5(A) of the Guidelines,

[g]ross income includes income from any source, and may include, but is not limited to, income from salaries, wages, commissions, bonuses, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, social security benefits (subject to Section 26), worker's compensation benefits, unemployment insurance benefits, disability insurance benefits, recurring gifts, prizes, and spousal maintenance. Cash value shall be assigned to in-kind or other non-cash benefits....

Wife specifically relies on Section 5(D) of the Guidelines, which states that "[e]xpense reimbursements or benefits received by a parent in the course of employment or self-employment or operation of a business shall be counted as income if they are significant and reduce personal living expenses." She maintains that Husband's income should include $12,739.58, the amount that his employer contributes to his ASRS plan plus the amounts that his employer pays for his retirement long-term disability, worker's compensation, and health- and life-insurance premiums. Wife argues that, since she has to pay for these benefits herself as a contract employee, it is unfair to exclude these benefits from Husband's gross income. Husband counters that there is no precedent for in-

4. The issue is not, as Wife contends, whether the parties entered a binding agreement; the question is whether the agreement was fair and equitable.

5. The family court did not elaborate on the reasons that it found that the agreement was unfair. We therefore infer any reasonable basis for its conclusions from our review of the record. *See Johnson v. Elson,* 192 Ariz. 486, 489, 967 P.2d 1022, 1025 (App.1998).

6. Wife noted that Husband receives paid vacation days and holidays from his employer, but she did not propose any increase in income that should be attributed for that benefit. We decline to consider this argument due to Wife's failure to cite any evidence in the record to support her position. *See* Rule 13(a)(6), Ariz. R. Civ.App. P.; *Brown v. U.S. Fid. & Guar. Co.,* 194 Ariz. 85, 93 ¶ 50, 977 P.2d 807, 815 (App.1998).

7. The Arizona Child Support Guidelines, adopted by the Arizona Supreme Court for actions filed after October 31, 2004, are found in the Appendix to A.R.S. § 25–320 (2007).

cluding such employment benefits in a parent's income and that these benefits do not reduce his personal living expenses.

¶ 23 This court in *In re Marriage of Robinson* considered whether to include an employee parent's stock options as income within the Guidelines and held that the husband's vested employee stock options were a significant form of compensation and that they were "non-cash benefits" properly included as income under the Guidelines. 201 Ariz. at 333 ¶ 10, 35 P.3d at 94. Although employee stock options are not analogous to the insurance premiums and retirement contributions paid by Husband's employer in this case, the analysis in *Robinson* supports Wife's claim that employee benefits may be included as income when they constitute a form of compensation.[8]

¶ 24 Although the question whether to include employee benefits such as employer-paid health-insurance premiums and employer contributions to retirement accounts as income to the employee parent is one of first impression in Arizona, courts in other jurisdictions have considered similar issues, and most courts agree that the employment benefits that a parent receives that reduce his living expenses should be included as income to that parent for the purpose of determining the amount of child support. *See Gangwish v. Gang-wish,* 267 Neb. 901, 678 N.W.2d 503, 514–15 (2004) (holding that benefits such as housing expenses, utilities, homeowners' insurance, other costs of home maintenance, groceries and furnishings were properly included as income to an employee parent, citing similar holdings in *Mascaro v. Mascaro,* 569 Pa. 255, 803 A.2d 1186, 1194 (2002); *Clark v. Clark,* 172 Vt. 351, 779 A.2d 42, 48–49 (2001), and *Morgan v. Ackerman,* 964 S.W.2d 865 (Mo.App.1998)). *See also In re Marriage of Schulze,* 60 Cal.App.4th 519, 70 Cal.Rptr.2d 488, 494–95 (Ct.App.1997) (holding that the use of a company car and employer-subsidized housing justified imputing the rental value of the car and the rent subsidy to the employee); *Mobley v. Mobley,* 309 S.C. 134, 420 S.E.2d 506, 509–510

(S.C.Ct.App.1992) (holding that the car, housing and utility allowances paid by an employer were properly included in the employee parent's income). Also, the courts in some jurisdictions have held that it is appropriate to include employer-provided health-insurance coverage as income to the employee parent because it saves the parent that expense. *See Bellinger v. Bellinger,* 46 A.D.3d 1200, 847 N.Y.S.2d 783, 785 (App.Div.2007) (holding that the trial court correctly included in the employee parent's income his "before-tax health insurance deductions" that were a "fringe benefit" provided by his employer); *Lawrence v. Delkamp,* 584 N.W.2d 515, 518 ¶¶ 16–17 (N.D.1998) (holding that it was not error to include as income of the employee parent the amounts that the employer paid for health-, life- and disability-insurance premiums); *Farr v. Cloninger,* 937 S.W.2d 760, 764 (Mo.Ct.App.1997); *Chiovaro v. Tilton–Chiovaro,* 247 Mont. 185, 805 P.2d 575, 578 (1991) (holding that employer-provided health insurance is a benefit that an employee parent would have to provide and that it should, therefore, be included as income). *Cf. Widman v. Widman,* 619 So.2d 632, 634 (La.App.1993) (holding that "gross income" does not include the insurance *premiums* paid by an employer but only the insurance *benefits* ). The Alabama court held that whether to include employer-paid health-insurance premiums as income to the employee parent depended on whether the parent had the ability to choose between accepting additional wages in lieu of the benefit. *See Jones v. Jones,* 920 So.2d 563, 564–65 (Ala.Civ.App.2005). When the "parent would be paid the same wages regardless of whether the parent decided to accept or to decline employer-paid health-insurance coverage ... that is, where a parent has no power to redirect payments for such coverage[,]" the benefit should not be included as income. *Id.* (italics omitted).

¶ 25 Cases involving employer contributions to a retirement plan are not as uniform. The Missouri court held that employer con-

---

**8.** The analysis also belies Husband's claim that such benefits should not be included as income because it would complicate the Guideline calculations to determine the value of such benefits.

Clearly implicit in the court's holding was its willingness to forgo a certain simplicity of calculation in order to achieve an accurate assessment of the employee parent's income.

tributions to an employee parent's retirement account were not income because "there was no discernable way in which these contributions would be of any assistance to Father in satisfying any child support payments." *Farr*, 937 S.W.2d at 764. The court noted that the employee parent did not have the option to receive cash in lieu of the contribution, and it concluded that this benefit therefore "provided no positive impact on [the parent's] immediate ability to pay child support." *Id.* The Colorado court similarly held that undistributed employer contributions to employee parents' pension plans did not constitute income for determining child support because the employers determined the amount of their contributions "and the employees did not have the option of directly receiving the amounts as wages." *In re Marriage of Mugge*, 66 P.3d 207, 211 (Colo. Ct.App.2003) (*citing Campbell v. Campbell*, 635 So.2d 44, 46 (Fla.Dist.Ct.App.1994); *Ballard v. Davis*, 259 A.D.2d 881, 686 N.Y.S.2d 225, 229 n. 3 (1999); and *Jordan v. Brackin*, 992 P.2d 1096, 1100 (Wyo.1999)). The courts that have included employer contributions to retirement plans as income have not provided any particular rationale for including this particular benefit. *See Cozier v. Cozier*, 819 So.2d 834, 836 (Fla.Dist.Ct.App.2002) (holding that the trial court properly included as income to the employee parent the benefits of medical and term life insurance, a company car and the employer's contributions to an individual retirement account but that the court was required to place a dollar value on each benefit); *Lawrence*, 584 N.W.2d at 518–19 ¶ 18(holding that the definition of income included the employer's contributions to the employee parent's pension fund); *DeMasi v. DeMasi*, 366 Pa.Super. 19, 530 A.2d 871, 879 (1987) (holding that it was not error to include in the employee parent's income the amounts that the corporation paid for the parent's life-, health- and disability-insurance premiums and its contributions to the pension plan).

¶ 26 Despite varying approaches, "courts throughout the nation have been unwavering in their attempt to reach an equitable outcome when it comes to determining a party's income for child support," *Gangwish*, 678 N.W.2d at 515, and we attempt to do the same. Thus, in interpreting the Guidelines, we seek to determine the intent of the Arizona Supreme Court based on the language and the overall purpose of the Guidelines. *Mead*, 198 Ariz. at 221 ¶ 8, 8 P.3d at 409.

¶ 27 One purpose of the Guidelines as expressed in Section 1(A) is "[t]o establish a standard of support for children consistent with the reasonable needs of children and the ability of parents to pay." The receipt of employment benefits that "are significant and reduce personal living expenses" affects a parent's ability to pay child support and should be considered as income to that parent. *See* Guidelines § 5(D). For example, a parent may incur a different expense for health and/or life insurance if his employer did not pay for (a portion of) the premium. However, worker's compensation insurance is not an ordinary living expense for which a parent would otherwise have to pay. These are issues for the family court to resolve in the first instance.

¶ 28 Neither is the impact on parental income of an employer's contribution to a retirement plan and to retirement long-term disability clear. For example, in this case, there was no evidence regarding whether Husband had an option to receive additional salary in lieu of his employer's ASRS contributions or whether he could determine the amount contributed. Similarly, there was no evidence regarding the retirement long-term disability benefit, and it is unknown whether this would be an ordinary living expense that Husband would otherwise incur. These also are issues for the family court to resolve in the first instance.

¶ 29 One court has noted that the inclusion as income of employment benefits may obligate a parent to pay child support based on income that he does not really have available to spend. *See In re Marriage of Schlafly*, 149 Cal.App.4th 747, 57 Cal.Rptr.3d 274, 281 (App.2007). This is a valid concern that may be considered by the family court in determining the appropriate amount of child support in any case. Indeed, Section 20(A) of the Guidelines allows the court to deviate from the Guidelines amount when the application of the Guidelines would be inappropri-

**24**

ate or unjust in the individual case, when the deviation is not contrary to the child(ren)'s best interests, and when the court makes written findings stating why it deviated and what the child-support obligation would have been with and without the deviation. Thus, in a case in which benefits artificially inflate a parent's income, the court may consider a deviation from the Guidelines.

¶ 30 We reverse the family court's child-support order, and we remand this case for its reconsideration of Husband's income.

### D.  Custody Evaluator's Fees

¶ 31 Wife argues that the family court abused its discretion by ordering her to reimburse Husband for her share of the custody evaluator's fees because his mother and not he paid those fees. She elaborates that there is no evidence that Husband has or will ever reimburse his mother for this expense and, therefore, that it is inequitable for Wife to have to reimburse Husband for an expense that he did not incur.

¶ 32 The family court apparently agreed with Wife as indicated in an order that it entered upon Wife's objections because it made Wife's obligation to reimburse Husband for one-half of the evaluator's fees contingent upon Husband filing an affidavit attesting that he had paid the fees or repaid his mother. There is no indication in the record that Husband submitted such an affidavit; his testimony that he repaid an unspecified amount to his mother is insufficient. The decree, issued after this order, does not include the language from this order, but it would be inequitable to require Wife to reimburse Husband for an expense that he has not paid. Therefore, we reverse this portion of the decree and remand for the court to modify the decree to include the language set forth in its April 25, 2007 minute entry order.

### E.  Appellate Attorneys' Fees

¶ 33 Each party requests an award of appellate attorneys' fees pursuant to A.R.S. § 25–324 (Supp.2007). Wife and Husband each contend that the other has taken unreasonable positions throughout the litigation and that the other has greater financial resources. We conclude that neither party has taken unreasonable positions and that the financial disparity between Husband and Wife does not warrant an award of fees to either of them.

### CONCLUSION

¶ 34 We affirm the orders of the family court regarding the division of Husband's retirement plan and the proceeds from the sale of the marital residence. We direct it to include in the decree its language from its April 25, 2007 minute entry order regarding the custody evaluator's fees. We reverse its child-support order, and we remand this case for the court's reconsideration of Husband's income. We deny each party's request for an award of appellate attorneys' fees.

CONCURRING: PHILIP HALL, and G. MURRAY SNOW, Judges.