NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

MOHAMED EL-SHARKAWY, *Petitioner/Appellant,*

*v.*

PATRICIA EL-SHARKAWY, *Respondent/Appellee.*

No. 1 CA-CV 17-0425 FC
FILED 7-19-2018

Appeal from the Superior Court in Maricopa County
No.  FC2016-003808
The Honorable William L. Brotherton Jr., Judge, *Retired*

**AFFIRMED IN PART; VACATED IN PART; AND REMANDED**

COUNSEL

Wilkins Law Firm PLLC, Phoenix
By Amy M. Wilkins
*Counsel for Petitioner/Appellant*

Amicus Law PLLC, Higley
By Marisa Kotalik
*Counsel for Respondent/Appellee*

## MEMORANDUM DECISION

Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Judge Michael J. Brown and Judge Jon W. Thompson joined.

**J O N E S**, Judge:

¶1 Mohamed El-Sharkawy (Husband) appeals from a decree of dissolution, asserting the family court erred by: (1) improperly calculating Husband's income, (2) improperly allocating the property and debt, and (3) awarding Patricia El-Sharkawy (Wife) indefinite spousal maintenance of $2,500 per month. Husband also argues he is entitled to a new trial because he claims the trial judge exhibited bias against him. For the reasons stated below, we affirm the calculation of Husband's income and reject the allegation of bias, but find the court abused its discretion in allocating the community property and debts. Accordingly, we vacate the property allocation and the spousal maintenance award that was based, in part, on that allocation, and remand for reconsideration of those issues.

## FACTS AND PROCEDURAL HISTORY

¶2 Husband and Wife married in 1988 and have five children, two of whom were minors at the time Husband filed for divorce in 2016.[1] Pursuant to temporary orders, the parties' three community residences were not to be sold absent written consent of both parties, and, if sold, "the parties shall split the proceeds 50/50." Husband was also ordered to pay all community debts, subject to reallocation, and $750 per month in temporary spousal maintenance.

¶3 Following the trial in February 2017, the family court entered a decree of dissolution ordering Husband to pay all community debts, which included credit card debt and vehicle loans. The court also ordered Husband to pay child support, as well as $2,500 per month in spousal maintenance indefinitely. In calculating these sums, the court included Husband's earnings as a part-time adjunct professor at Maricopa Community Colleges (MCC) in addition to his regular, full-time earnings

---

[1] "We view the facts in the light most favorable to sustaining the family court's ruling." *Bell-Kilbourn v. Bell-Kilbourn*, 216 Ariz. 521, 522 n.1, ¶ 1 (App. 2007) (citing *Kohler v. Kohler*, 211 Ariz. 106, 107, ¶ 2 (App. 2005)).

at American Airlines.  The court rejected Husband's argument that he was entitled to credit for one-half of the mortgage payments he was ordered to pay pending sale of two community residences and, finally, ordered Husband to pay Wife one-half of the total proceeds from the sale of the parties' Tucson house, implicitly rejecting his claim that most of the proceeds were used for the community expense of sending one of the parties' minor children to a rehabilitation facility.

¶4         Husband timely appealed.  We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) §§ 12-120.21(A)(1)[2] and -2101(A)(1).

## DISCUSSION

### I.     Husband's Income

¶5         Husband argues the family court improperly calculated his earnings when calculating spousal maintenance and child support. Generally, we review the factual determinations underlying the calculation of child support and the resulting award for an abuse of discretion.  *See In re Marriage of Robinson*, 201 Ariz. 328, 331, 335, ¶¶ 5, 17 (App. 2001) (citing *Little v. Little*, 193 Ariz. 518, 520, ¶ 5 (1999)).  Whether the court properly considered Husband's income from his second job as gross income for the purpose of calculating support obligations presents a question of law reviewed *de novo*.  *Id.* at 331, ¶ 5 (citations omitted).  Because neither party requested written findings of fact or conclusions of law, we presume the court found every fact necessary to support its ruling.  *See Ringar v. Rinegar*, 231 Ariz. 85, 90, ¶ 20 (App. 2012) (citing *Able Distrib. Co. v. James Lampe, Gen. Contractor*, 160 Ariz. 399, 402 (App. 1989)).

¶6         According to the record, Husband worked full-time at American Airlines, earning $39.62 an hour.  Husband also worked as an adjunct professor at MCC, a position he had held since 2008.  Husband's MCC earnings historically varied depending on the number of classes he taught.  For example, in 2014 and 2015, Husband earned approximately $25,000 per year from MCC, but, according to Husband, he earned only $7,000 in 2016 because he was offered fewer classes.  Husband testified he would earn only $7,000 in 2017, adding that the extra hours at MCC were difficult for him, and he did not plan to continue teaching.

¶7         In the decree, the family court calculated Husband's monthly income from American Airlines to be $6,867.  Husband argues this amount

---

[2]        Absent material changes from the relevant date, we cite a statute's current version.

is not supported by the evidence and is contrary to the Arizona Child Support Guidelines, A.R.S. § 25-320 app. (Guidelines). Instead, Husband argues his monthly income from American Airlines is $70,265 annually, or $5,855 per month. However, he did not submit a 2016 tax return or W-2 to support this assertion; rather, Husband averred in his Affidavit of Financial Information that he earns $39.62 per hour. The family court used that hourly wage to calculate a monthly income of $6,867.[3] The court did not abuse its discretion in using the information Husband provided to calculate his gross monthly income of $6,867 from American Airlines, and we find no error.

¶8        Husband also contends the family court incorrectly included $7,000 in annual income from his second job at MCC. For purposes of calculating child support, a party's "gross income" includes:

> income from any source, and may include, but is not limited to, income from salaries, wages, commissions, [and] bonuses . . . . Generally, the court should not attribute income greater than what would have been earned from full-time employment. Each parent should have the choice of working additional hours through overtime or at a second job without increasing the child support award. *The court may, however, consider income actually earned that is greater than would have been earned by full-time employment if that income was historically earned from a regular schedule and is anticipated to continue into the future.*
>
> The court should generally not attribute additional income to a parent if that would require an extraordinary work regimen. Determination of what constitutes a reasonable work regimen depends upon all relevant circumstances including the choice of jobs available within a particular occupation, working hours and working conditions.

Guidelines § 5(A) (emphasis added). Thus, the Guidelines do not "entitle a parent who continues to work the same schedule as he or she consistently worked during the marriage to a *decreased* support obligation." *McNutt v.*

---

[3]        To reach this figure, the family court first calculated Husband's annual income by multiplying the hourly wage, $39.62, by 40 hours a week and 52 weeks per year. The court then divided the annual income by 12 to reach Husband's monthly income.

*McNutt*, 203 Ariz. 28, 31-32, ¶ 14 (App. 2002) (citing *Jensen v. Bowcut*, 892 P.2d 1053, 1057 n.3 (Utah App. 1995)).

**¶9** The record reflects Husband had taught at MCC for eight years before filing for dissolution, with varied hours and earnings. Although Husband claimed the additional hours were now difficult for him, the record does not suggest that teaching one class each year, as he did in 2016, would require an "extraordinary work regimen." To the contrary, the evidence shows this income was "historically earned from a regular schedule" and would "continue into the future." *See* Guidelines § 5(A); *cf. Lundy v. Lundy*, 242 Ariz. 198, 200, ¶ 9 (App. 2017) (finding error in the decision to include income from a second job where there was no evidence that such income was "historically earned from a regular schedule and . . . anticipated to continue into the future"). Accordingly, the family court did not err by concluding Husband's historical work at MCC would likely continue into the future and including income received from MCC in Husband's gross income.

**¶10** Husband also argues the family court erred by failing to apply the balancing test set forth in *Pullen v. Pullen*, 223 Ariz. 293, 297-98, ¶¶ 15-18 (App. 2009), to determine whether to include income from his second job for purposes of spousal maintenance. In *Pullen*, one spouse quit a higher paying job in Arizona and relocated to another state where he could only find a lower paying job. *Id.* at 295, ¶ 4. The court attributed his income at the higher earning capacity for purposes of calculating his support obligation. *Id.* at ¶ 6. This Court affirmed after considering several factors, including the spouse's reasons for relocating, the timing and circumstances of the change, the impact on and conduct of the parties, and the spouse's efforts to secure similar employment. *Id.* at 297-98, ¶¶ 19-20. Here, however, the court was not considering a voluntary reduction in earnings. Instead, the court considered Husband's actual historical earnings from both jobs, in accordance with the Guidelines. *See supra* ¶¶ 8-9. *Pullen* does not apply.

## II.    Property Allocation

**¶11** Husband argues the family court erred in its allocation of property and debts. Within the decree, the court awarded each party one-half of the community assets but ordered Husband to pay all community

debts after finding Wife was unable to work.[4]  The court advised it would attempt to remedy this inequity by "consider[ing] the disproportionate distribution of debts in determining the amount and duration of spousal maintenance awarded to [Wife]."  We review the allocation of community property and debt for an abuse of discretion.  *Boncoskey v. Boncoskey*, 216 Ariz. 448, 451, ¶ 13 (App. 2007) (citing *Miller v. Miller*, 140 Ariz. 520, 522-23 (App. 1984), and *Lee v. Lee*, 133 Ariz. 118, 121 (App. 1982)).  "An abuse of discretion occurs when a court commits an error of law in the process of reaching a discretionary conclusion."  *In re Marriage of Williams*, 219 Ariz. 546, 548, ¶ 8 (App. 2008) (citing *Grant v. Ariz. Pub. Serv. Co.*, 133 Ariz. 434, 456 (1982)).

**¶12**         Although the court may order an unequal division of community property under certain circumstances, *see Inboden v. Inboden*, 223 Ariz. 542, 547, ¶ 18 (App. 2010), our supreme court has held that "property division and spousal maintenance are two separate and distinct considerations at dissolution," *Koelsch v. Koelsch*, 148 Ariz. 176, 182 (1986) (citing *In re Marriage of Foster*, 125 Ariz. 208, 210-11 (App. 1980)); *see also Elliott v. Elliott,* 165 Ariz. 128, 137 (App. 1990) ("Property settlements, spousal maintenance awards, and child support awards involve distinct considerations.").  Just as "increased spousal maintenance cannot justify depriving a spouse of his or her property right," nor can a decreased support obligation justify inequitable distribution of community debts.  *Koelsch*, 148 Ariz. at 182 (citing *Buttram v. Buttram*, 122 Ariz. 581, 582 (1979)); *cf. Elliott*, 165 Ariz. at 137 ("The trial court may not adjust the amount of a spousal maintenance or child support award to account for a community debt that was not allocated in the property settlement.").  Doing so essentially creates a nonmodifiable award of maintenance that impermissibly "ignores the respective spouses' needs and ability to pay, and deprives the trial court of any flexibility to respond to the parties' changing economic circumstances."  *Foster*, 125 Ariz. at 211.  Accordingly, awarding one spouse a lesser share of debt as a substitute for spousal maintenance is contrary to law.

**¶13**         Here, the family court awarded Husband half the community property but assigned him all community debts with the intent to "make up the difference" in its spousal maintenance calculation.  This was error.  To the extent Wife was unable to pay her share of the debts, the court should

---

[4]     Although Husband argues the family court erroneously characterized the debt as his separate debt, the record indicates the court identified the debts as belonging to the community and simply ordered Husband to pay them all.

have adjusted the allocation of community property to account for Husband's greater debt obligation. Thus, the property could have, and should have, been allocated in a manner that would achieve an equitable result without improperly conflating the spousal maintenance award and property allocation. Accordingly, we vacate the portions of the decree allocating community property and debt, and remand the issues for reconsideration consistent with Arizona law.

¶14        Husband separately argues the family court erred in requiring him to reimburse Wife for one-half the proceeds of the sale of one residence after he had already used those funds to pay for their minor son to attend a rehabilitation facility. Husband testified, however, that he did not object to reimbursing Wife for half of the net proceeds of the sale. Therefore, Husband has waived this argument. *See Servs. Holding Co. v. Transam. Occidental Life Ins.*, 180 Ariz. 198, 208 (App. 1994) (holding a party may not raise on appeal an issue he abandoned below) (citing *Stuart v. Ins. Co. of N. Am.*, 152 Ariz. 78, 84 (App. 1986)).

¶15        Husband also argues the family court abused its discretion by ordering him to pay the mortgages and expenses pending the sale of the community residences without reimbursing him for those payments from the sales proceeds. On remand, the court is directed to consider each spouse's payment of community debts or expenses following service of a petition before making an equitable property distribution. *See Bobrow v. Bobrow*, 241 Ariz. 592, 596, ¶ 19 (App. 2017) (noting efforts to service community debt and maintain community assets with post-petition separate property "must be accounted for in an equitable property distribution").

## III.    Spousal Maintenance

¶16        Husband argues the record lacks sufficient evidence to sustain the family court's findings regarding Wife's ability to work and that the subsequent indefinite award of spousal maintenance to Wife constitutes an abuse of discretion. We do not reweigh evidence on appeal and will affirm the court's factual findings so long as a reasonable person could draw the same conclusion from the evidence presented. *Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 93-94, ¶¶ 4-5 (App. 2009).

¶17        Here, the family court found Wife had not been employed since 1991, was certified as disabled, could not work, and had no earning ability. Moreover, given her lack of employment history, poor health, and the children's special needs, Wife was unable to acquire sufficient training

or education to find adequate employment. The court found Wife had contributed to Husband's earning ability by taking care of the home and children during the marriage and reduced her own income and career opportunities by leaving her job so Husband could pursue his career. It also concluded Wife should not be required to deplete the retirement assets awarded to her or the funds from the sale of the community homes prior to retirement. *See Gutierrez v. Gutierrez*, 193 Ariz. 343, 348, ¶¶ 18-19 (App. 1998) (citing *Thomas v. Thomas*, 142 Ariz. 386, 391 (App. 1984)). Although Husband challenges the 1999 certificate of disability Wife offered into evidence as outdated and contends a letter from her doctor detailing her foot-related problems established that Wife could work in a limited capacity at jobs that allowed her to sit, the court rejected these contentions, and we will not second-guess its evaluation of the weight to be given and inferences to be drawn from conflicting evidence. *Id.* at 347-48, ¶ 13 (citing *Premier Fin. Servs. v. Citibank (Ariz.)*, 185 Ariz. 80, 85 (App. 1995)). A reasonable person could agree with the court's findings based upon the evidence presented, and they are affirmed.

¶18 Nevertheless, because the family court must consider the allocation of property and debt between the parties before fashioning a spousal maintenance award, *see* A.R.S. § 25-319(B)(4), (5), (9) (directing the court to consider "[t]he ability of the spouse from whom maintenance is sought to meet that spouse's needs while meeting those of the spouse seeking maintenance, . . . [t]he comparative financial resources of the spouses, . . . [and] [t]he financial resources of the party seeking maintenance, including marital property apportioned to that spouse" when determining a fair amount and period for spousal maintenance), and we have already vacated the allocation of property and debt, the award of spousal maintenance is likewise vacated. On remand, the court is directed to reconsider the duration and amount of spousal maintenance in accordance with A.R.S. § 25-319(B).

## IV. Judicial Bias

¶19 Finally, Husband argues the family court judge was biased and should have recused himself *sua sponte* pursuant to Arizona Code of Judicial Conduct Rule 2.11. Rule 2.11 provides: "A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might

reasonably be questioned, including . . . [when] the judge has a personal bias or prejudice concerning a party."[5]

**¶20**       A party asserting judicial bias must overcome a strong presumption that trial judges are free from bias and prejudice and "prov[e] 'a hostile feeling or spirit of ill-will, or undue friendship or favoritism, towards one of the litigants.'" *State v. Cropper*, 205 Ariz. 181, 185, ¶ 22 (2003) (quoting *In re Guardianship of Styer*, 24 Ariz. App. 148, 151 (1975)). "Opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *State v. Henry*, 189 Ariz. 542, 546 (1997) (quotation omitted).

**¶21**       Husband claims the family court judge showed improper bias by stating that gender equality was not the "controlling culture" in the Middle East and then finding Husband lacked credibility because he lied to the court-appointed advisor about the judge's statements. Having considered the context within which the judge's comments were made, we find no indication that the judge had a deep-seated antagonism that would make fair judgment impossible. *See Henry*, 189 Ariz. at 546. Additionally, the court cited other grounds for questioning Husband's credibility, including: that Husband denied committing domestic violence but admitted to acts that constitute domestic violence; that Husband lied about speaking to the children about the litigation; and that Husband denied having a pension through MCC when his paystubs showed pension deductions. The record does not reflect the judge had a personal bias requiring disqualification pursuant to Rule 2.11, and we find no error.

## CONCLUSION

**¶22**       The factual findings underlying the family court's spousal maintenance award are affirmed. The allocation of community and property debts contained within the decree of dissolution is vacated, as is the court's determination of the appropriate amount and duration of spousal maintenance. The case is remanded for reconsideration of these

---

[5]       Wife argues Husband waived this argument by raising it for the first time in his opening brief. However, the comments to Rule 2.11 state that a judge's obligation to disqualify himself for any reason listed in the rule "applies regardless of whether a motion to disqualify is filed." Ariz. R. Sup. Ct. 81, Canon 2.11 cmt. 2.

issues.  We leave it to the court's discretion to determine if further evidence or argument would be beneficial to proper application of the law.

**¶23**        Wife requests an award of attorneys' fees and costs on appeal pursuant to A.R.S. § 25-324(A).  In our discretion, we decline that request. Additionally, because neither party was entirely successful on appeal, we decline to award costs.

