NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

ROBERT MICHAEL SEASE, *Petitioner/Appellant*,

*v.*

ANGELINA MARIE SEASE, *Respondent/Appellee*.

No. 1 CA-CV 23-0515 FC
FILED 4-4-2024

Appeal from the Superior Court in Maricopa County
No. FC2016-070786
The Honorable Jillian Francis, Judge

**AFFIRMED IN PART; DISMISSED IN PART**

COUNSEL

Raymond S. Dietrich, PLC, Phoenix
By Raymond S. Dietrich
*Counsel for Petitioner/Appellant*

Keist, Thurston O'Brien, P.C., Glendale
By James P. Buesing
*Counsel for Respondent/Appellee*

---

## MEMORANDUM DECISION

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge Angela K. Paton and Judge Michael S. Catlett joined.

---

**M O R S E**, Judge:

**¶1**      Robert Sease ("Husband") appeals from the superior court's order granting Angelina Sease's ("Wife") motion to enter a qualified domestic relations order ("QDRO") and awarding her attorney fees. For the following reasons, we affirm the order entering the QDRO but dismiss the attorney-fees appeal.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**      Husband and Wife married in 1993. Husband began a career as a firefighter paramedic, and in September 1996, he began to accrue benefits under the Public Safety Personnel Retirement System ("PSPRS"). Husband left his job as a firefighter paramedic on April 1, 2022. As a participant in the PSPRS, Husband did not contribute to the Social Security Retirement System for his pay as a firefighter paramedic. But Husband had a second job and paid into the Social Security Retirement System during the marriage for his compensation from that job. Wife also paid into the Social Security Retirement System but accrued no other retirement benefits during the marriage.

**¶3**      Husband filed for divorce in February 2016. In September 2017, the parties entered an Arizona Rules of Family Law Procedure ("Rule") 69 agreement ("Agreement") to resolve any issues in the dissolution and asked the court to vacate the impending trial. In pertinent part, the Agreement provided that the parties would retain "Mr. Bob Harrian Esq. . . . for the preparation of the Qualified Domestic Order," to divide the PSPRS plan, but the Agreement did not further specify how the plan would be divided. The court entered a decree of dissolution in April 2018 ("Decree"), "adopting and incorporating . . . the Rule 69 agreement," and ordering the parties to "retain Mr. Robert Harrian, Esq. within the next thirty days (30) to prepare a Qualified Domestic Relations Order."

**¶4**      Neither party retained Mr. Harrian within 30 days of the Decree. Instead, Wife contacted Mr. Harrian's office in July 2021 and was

put in touch with Mr. O'Brien, a former associate of Mr. Harrian. Later, in October 2021, Mr. Harrian merged his law firm into Mr. O'Brien's firm, Keist Thurston O'Brien. Wife and Mr. O'Brien submitted a QDRO to the PSPRS for approval on August 6, 2021. The proposed QDRO employed the "time rule" (months as a member of the PSPRS plan while married ÷ total months as a member of the PSPRS plan multiplied by 50% = Wife's portion) from *Van Loan v. Van Loan*, 116 Ariz. 272, 274 (1977) to calculate the community portion of the PSPRS plan.

¶5         Husband received a copy of the QDRO in February 2022, and in June 2022, he refused to sign the QDRO. Wife then filed a motion with the court to enter a "Domestic Relations Order." Husband responded to Wife's motion, arguing (i) the connection between Mr. O'Brien and Mr. Harrian is unknown; (ii) Wife's share of the PSPRS should be valued at maturity, under *Koelsch v. Koelsch*, 148 Ariz. 176, 182–83 (1986); (iii) the QDRO improperly uses the "time-rule"; (iv) the QDRO does not consider social-security offsets and an offset should be applied to Wife's community interest, which is proper under *Kelly v. Kelly*, 198 Ariz. 307, 309, ¶¶ 7–10 (2000); and (v) the Decree did not award Wife's community interest to her estate. The court denied Wife's motion for summary judgment and held an evidentiary hearing in April 2023.

¶6         At the hearing, Wife and Husband testified, and both had experts testify regarding the QDRO, social-security offsets, and the estate clause in the QDRO. Husband no longer disputed Mr. Harrian's involvement in preparing the QDRO. Wife testified that she never discussed social-security offsets with Husband, she went to Mr. O'Brien for Husband's convenience because of his ongoing health issues, Husband initially agreed to the QDRO but reneged on his promise, and she did not ask for attorney fees at first, and only did so after Husband "contested" the issue. Wife's expert testified that the *Van Loan* formula was the correct method to divide Husband's PSPRS plan, and Mr. Harrian prepared "the order . . . as per normal."

¶7         Husband testified that Wife had previously agreed to divide the PSPRS plan for the "time that [they] were married." Husband's expert testified that a social-security offset of 17% should be applied, and Wife should have only been awarded 41.5% of the PSPRS plan.

¶8         Both parties presented a closing argument. Wife's attorney proffered that (i) Husband waived his social-security-offset argument because he did not raise it during the divorce proceedings, and even if he had, it would not apply; (ii) the *Van Loan* formula should be applied because

Husband worked beyond his retirement age and Wife never requested or received *Koelsch* payments; (iii) Wife's interest in the PSPRS plan should be payable to her estate because the Decree and A.R.S. § 25-318(D) grants her a vested separate interest in her portion of the PSPRS benefit; and (iv) Wife did not waive the attorney-fees issue. Husband's attorney argued that the "time rule exception applies under *Koelsch*" and the value of Husband's PSPRS plan should be "frozen at the date of service," meaning Wife would be awarded 50% of the value of the PSPRS benefit at the time of service, reduced by a social-security offset pursuant to *Kelly*, such that Wife should only receive "41[.5%] as of date of service." Husband's attorney also argued that Wife is not entitled to have the PSPRS plan be payable to her estate.

¶9            The court took the matter under advisement and issued an order in June 2023 ("Order"). The court granted Wife's motion to enter the QDRO and found that Husband had waived his arguments for "certain exceptions" because he did not raise them prior to entry of the Decree. The court further ordered Husband to "reimburse Wife for half of the cost of the preparation for the QDRO," ordered Wife to lodge the QDRO with the court by August 1, 2023, and awarded Wife her attorney fees, directing her to submit a fees application. The court delayed its decision on the amount of attorney fees and costs but certified its ruling on the Order as a final, appealable order pursuant to Rule 78(b). On July 18, Husband appealed from the Order. Three days later, the court issued the QDRO which applied the *Van Loan* formula and divided Husband's months as a member during the marriage (roughly 233 months) by months as a member (roughly 307 months) then multiplied the quotient by 50%. Thus, the QDRO awarded Wife roughly 38% of the total value of Husband's PSPRS benefit.

¶10            Husband timely appealed the Order, and we have jurisdiction under A.R.S. § 12-2101(A)(1) over the decision to enter the QDRO. *See Bollermann v. Nowlis*, 234 Ariz. 340, 342, ¶ 12 (2014) (stating that rulings on the merits that include Rule 78(b) language are appealable even if attorney fees are unresolved). Following Husband's notice of appeal and Wife's application for attorney fees, the court entered a separate order in August 2023, awarding Wife $23,845.44 in attorney fees and costs. Husband did not amend or submit a new notice of appeal after the court entered its final order on attorney fees and costs. As discussed *infra* ¶ 21, we do not have jurisdiction over Husband's challenge to the attorney-fees award and dismiss that portion of this appeal.

**DISCUSSION**

4

¶11　　　　On appeal, Husband argues the court should have (i) used the "frozen benefit formula" pursuant to *Koelsch* to value the PSPRS plan, (ii) applied a social-security offset, and (iii) not granted Wife's estate an interest in the PSPRS plan.　He also contests the award of attorney fees.

## I.　Waiver.

¶12　　　　"In apportioning community property between the parties at dissolution, the superior court has broad discretion to achieve an equitable division, and we will not disturb its allocation absent an abuse of discretion." *Boncoskey v. Boncoskey*, 216 Ariz. 448, 451, ¶ 13 (App. 2007).　The distribution "need not be in kind or exactly equal, but must result in substantial equality." *Miller v. Miller*, 140 Ariz. 520, 522 (App. 1984).

¶13　　　　The court declined to consider Husband's arguments about valuation, social-security offset, and Wife's estate because the parties submitted their Agreement "without asking for out-of-the-ordinary terms of applications of the rules."　Based on the evidence presented during the evidentiary hearing, the court did not abuse its discretion.　Before the parties reached the Agreement, they filed a joint pretrial statement in which Husband asked for the parties to "equally divide the community interest in the [PSPRS] retirement plan[] and equally share in the cost to do so" and suggested "utilizing Robert Harrian for purposes of dividing the [PSPRS plan] and/or the preparation of a qualified domestic relations [order]."　Wife asked to be "awarded her community portion" of the PSPRS plan and agreed to use Mr. Harrian to prepare the QDRO.

¶14　　　　Husband argues that the PSPRS plan should have been valued using the "frozen benefit" formula pursuant to *Koelsch* rather than the "time-rule" pursuant to *Van Loan*.　Husband asserts that Wife's share of the PSPRS benefit should have been fixed at the time of service when Husband had 233 months service in the plan (i.e., 50% of the total benefit payable at that time).[1]　He argues that awarding Wife roughly 38% of the PSPRS benefit payable now (i.e., a share of the benefit payable now based on 307 months service) is inequitable because it is based, in part, on the additional months that Husband participated in the PSPRS after the marital community ended.　Wife contends the *Van Loan* formula is correct and it would be inequitable to apply a "frozen benefit" formula because Husband

---

[1]　　Husband argues that 50% of the PSPRS benefit should be further reduced by a social-security offset, resulting in Wife receiving 41.5% of the benefit payable at the time of service.　We address this argument below. *See infra* ¶ 18.

did not make any *Koelsch* payments, and her "interest remained in PSPRS, while Husband continued to work, which made the value of the pension increase."

¶15 Here, the court rejected Husband's request for a valuation based on *Koelsch*. Implicit in the Order, the court found the QDRO equitable. The court also explicitly found that if the parties had intended for a specific valuation to apply, it would have been included in the Agreement. Thus, the court found that Husband had waived this new request for a particular valuation under *Koelsch* due to the request's "out-of-the-ordinary" nature.

¶16 The regular method for valuing a pension benefit is "dividing the length of time worked during the marriage by the total length of time worked toward earning the pension." *Hetherington v. Hetherington*, 220 Ariz. 16, 19, ¶ 10 (App. 2008) (quoting *Johnson v. Johnson*, 131 Ariz. 38, 41 n.4 (1981)). *Koelsch* acknowledges that "delaying the receipt of benefits until the employee spouse retires also forces the non-employee spouse to share the risk that" the non-employee spouse would lose benefits if the employee spouse died before retirement. 148 Ariz. at 181. To prevent the employee spouse from unilaterally imposing that risk, the court approved pre-retirement payments from the employee spouse to the non-employee spouse. *Id*. at 185. Here, Husband made no indication in the Agreement or prior to dissolution that an exception applied and has made no pre-retirement *Koelsch* payments to Wife. And because Wife did not begin receiving pre-retirement payments at the time of separation, there is no basis upon which to argue that *Koelsch* stands for the proposition that she is not entitled to her proportionate share of the benefit payable when Husband retired. The court did not abuse its discretion in finding that it was too late for Husband to invoke *Koelsch*.

¶17 Further, "[e]xpert testimony is necessary to ascertain the present cash value which reflects contingencies including mortality, interest, probability of vesting, and probability of continued employment." *Miller*, 140 Ariz. at 523. And Husband did not present any evidence of the present cash values of PSPRS benefits. In other words, Husband failed to present evidence from which the court could determine whether the present cash value of the 38% of the PSPRS benefit awarded to Wife in 2023 was greater or less than 50% of the PSPRS benefit payable in 2018 at the time of the Decree. In this situation, the court did not abuse its discretion to enter the QDRO. *See Hetherington*, 220 Ariz. at 20, ¶¶ 13–15 (rejecting the wife's argument that she was not required to "prove the value of the retirement plan as of the date of service"); *see also Miller*, 140 Ariz. at 523

(finding no abuse of discretion when the parties provided "no evidence upon which to find the present cash value of the retirement plan"). We affirm the court's entry of the QDRO.

**¶18** Similarly, we affirm the court's determination that Husband waived the social-security offset and estate-clause issues. Husband and Wife stipulated to have Mr. Harrian draft the QDRO in the Agreement, and neither party brought forth the social-security offset or estate issues before the entry of the Decree. *See Leathers v. Leathers*, 216 Ariz. 374, 378, ¶ 19 (2007) (noting that an issue is not properly raised when it is not raised in a pretrial statement or at trial). If Husband wanted these special provisions included in the QDRO, the time to ask for them was during the dissolution proceedings. Further, Husband acknowledges that both he and Wife contributed to, and will receive a benefit under, the Social Security Retirement System. Thus, he has not demonstrated that he is eligible for a social-security offset. *See Kelly*, 198 Ariz. at 309, ¶ 12 (noting that a social-security offset is not appropriate if both spouses participated in social security, even when their respective social-security benefits are not equal). Likewise, Wife has an undivided interest over her share of the pension. *See Snyder v. Tucson Police Pub. Safety Pers. Ret. Sys. Bd.*, 201 Ariz. 137, 141, ¶ 14 (App. 2001) ("We reaffirm our conclusion in *Snyder* that, when the dissolution decree awarded Caren a 21.61 percent share of Michael's retirement benefits, that share immediately became her vested, separate property and, upon her death, was thereafter transferred by will to her parents." (cleaned up)).

## II. Attorney Fees.

**¶19** We have an independent duty to examine whether jurisdiction exists over matters on appeal. *Ghadimi v. Soraya*, 230 Ariz. 621, 622, ¶ 7 (App. 2012).

**¶20** Husband claims the court erred in awarding Wife attorney fees. The Order found that Husband acted unreasonably and granted Wife a portion of her attorney fees and costs. The Order did not award an amount and ordered Wife to apply for fees so the court could determine the amount in a separate judgment. Pursuant to Rule 78(b), the court certified the Order as a "final, appealable order" and that there was "no just reason for delay." *See Natale v. Natale*, 234 Ariz. 507, 509, ¶ 5 (App. 2014) (noting "a family court ruling is not final and appealable until all of the claims pending before the court have been resolved" or until the court has issued a "certification of finality" under Rule 78(b)). Husband appealed from the Order. The court awarded Wife $23,845.44 in attorney fees and costs on

August 14, and Husband did not amend his appeal or file a separate notice of appeal from that judgment.

**¶21**        Because a Rule 78(b) certification is improper for an unresolved claim, the court erred in certifying the decision regarding attorney fees before the attorney-fees award was final. *See Hernandez v. Athey*, --- Ariz. ---, ---, ¶ 9, 541 P.3d 601, 604 (App. Dec. 21, 2023). Thus, despite the Rule 78(b) certification, we lack jurisdiction to consider the attorney-fees issue and dismiss that portion of the appeal.

## CONCLUSION

**¶22**        For the foregoing reasons, we affirm in part and dismiss in part. Husband requests his attorney fees and costs on appeal pursuant to A.R.S. § 25-324, and Wife requests her fees and costs pursuant to A.R.S. § 25-324 and ARCAP 21. In the exercise of our discretion, we decline to award attorney fees. But we award Wife, as the prevailing party, her costs on appeal upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:    AA

8