NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

KELSEY WILLIAM LAVICKA, *Petitioner/Appellee*,

*v.*

TAMMY THERESA LAVICKA, *Respondent/Appellant*.

No. 1 CA-CV 23-0339 FC

FILED 07-30-2024

Appeal from the Superior Court in Maricopa County
No. FC2017-003984
The Honorable Glenn A. Allen, Judge

**AFFIRMED IN PART; REVERSED IN PART AND REMANDED**

COUNSEL

Tiffany & Bosco PA, Phoenix
By Charles E. Sears, Kelly Mendoza
*Counsel for Petitioner/Appellee*

Tammy Theresa Lavicka, Phoenix
*Respondent/Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Andrew M. Jacobs delivered the decision of the Court, in which Judge Jennifer M. Perkins and Judge David D. Weinzweig joined.

---

**J A C O B S**, Judge:

¶1       In her second appeal from her divorce decree, Tammy Lavicka ("Mother") asserts the superior court committed a variety of errors. Procedurally, she challenges gaps in transcripts, denials of continuances, and supposed denials of requests for Americans with Disabilities Act ("ADA") accommodations. Substantively, she challenges the court's order reducing the equalization payment she owes Kelsey Lavicka ("Father") by $1,651.92 of student loan debt he owes her, the court's division of Father's military pension, and the court's grant to Father of attorneys' fees. We see no error in the superior court's handling of those matters. However, because the court did not apply the 2022 Child Support Guidelines or provide good cause not to do so, we reverse and remand for it to revisit that issue.

## FACTS AND PROCEDURAL HISTORY

### A.      This Court Remanded Four Issues Regarding Mother's and Father's Decree of Dissolution of Marriage and Mother Filed a Petition to Modify Spousal Maintenance.

¶2       Mother and Father married in June 2012, and have one minor child. In August 2019, the court issued a decree dissolving their marriage. This court heard Mother's appeal from that decree. *See Lavicka v. Lavicka*, 1 CA-CV 19-0660 FC, 2021 WL 100196 (Ariz. App. Jan. 12, 2021) (mem. decision). We vacated the decree's child support calculation, division of student loan debt, and the division of Father's military pension, and remanded to the superior court. *Id.* at *4 ¶ 21.

### B.      After Remand, Mother Resists Sitting for Deposition and Providing Other Discovery, Leading to Sanctions.

¶3       On January 26, 2021, Mother filed a Petition to Modify a Support Order seeking to extend her spousal maintenance by three years. Over the next two years, Father sought unsuccessfully to depose Mother. Father first noticed Mother's deposition for July 29, 2021. Mother's

deposition was cancelled to give her new counsel time to become familiar with the case. The court granted the parties' joint request to continue the August 30, 2021 trial, vacated the trial date, and set a status conference for September 30, 2021. After Mother's first counsel withdrew and a second attorney entered his appearance, the court reset trial for February 23, 2022. In early February 2022, the parties scheduled Mother's deposition for the following month. That month, the court set an evidentiary hearing for June 29, 2022, on Mother's Petition to Modify Spousal Maintenance and the issues on remand.

¶4        On March 21, 2022, the parties failed to complete Mother's deposition. It started thirty minutes late due to Mother's tardiness. During the deposition, Mother said she was not feeling well and asked that someone else read the exhibits she was being asked to read. Given Mother's claimed difficulties, the deposition was rescheduled to May 10, 2022. Mother did not appear for the rescheduled deposition and did not respond to Father's later attempts to reschedule the deposition.

¶5        The parties discovery disputes escalated. In May 2022, Father moved to dismiss Mother's Petition to Modify Spousal Maintenance, asking alternatively that the court order Mother to comply with discovery. Mother moved to terminate future depositions, seeking sanctions against Father over her initial deposition, and asking that "all requests for disability accommodation as protected by the ADA . . . be respected." The court denied Mother's motion, rejecting her claims of unprofessional conduct by Father's counsel.

¶6        On June 27, 2022, Father renewed the requests in his May motion concerning Mother's deposition. At a status conference, the court ordered that if Father was unable to obtain Mother's medical records the court would grant Father's Motion to Dismiss. In August 2022, the court found Mother had failed to comply with Father's discovery requests, noting it already "admonished" Mother warning her that continuing failure to produce requested information would "most likely result in the dismissal of [Mother's] Petition to Modify Spousal Maintenance." The court repeated this warning at a September 19, 2022 status conference, finding Mother frustrated her first deposition and warning that her refusal to participate in a second deposition could result in the dismissal of her Petition. The court granted Mother's request for accommodations, allowing her to provide a list of them to Father's counsel in advance of her deposition. Despite that, Mother did not respond to Father's counsel's attempts to schedule another deposition.

¶7          On September 26, 2022, Mother moved to continue her deposition further, claiming chronic illness. In October 2022, the court ordered Mother to file medical documents to show she could not proceed due to illness. The court also ordered Father's counsel to file proof of a staycation Father alleged Mother took with their minor child while claiming disabling illness, which Father later did. Father then noticed Mother's deposition for November 2, 2022.

¶8          Resisting the deposition, Mother filed her medical records and requested the matter be placed on the inactive calendar so that her health could improve because she was "medically homebound," and so she could obtain legal representation. Without noting a particular accommodation she desired, Mother requested "ADA accommodations in the future whenever possible." In October 2022, Mother asked Father's counsel to reschedule the deposition to sometime in January 2023 because of her illness. Mother also requested the deposition be conducted virtually and with frequent breaks.

¶9          Meanwhile, Father noticed Mother's deposition for November 2, 2022. Father did not want to proceed in January 2023, and offered to break up the deposition into two-hour blocks over two days. Mother replied she was not available the second day and that scheduling a deposition now would be "counter-productive."

¶10         The court was "completely flummoxed by the inability of the parties to resolve this matter." The court found that Father's proof of Mother's staycation showed "Mother was well enough to participate in a staycation just prior to the trial" and that the "delay [the court granted] was not necessary" and "only increased attorney's fees and costs." The court thus denied Mother's request to continue the case because the matter had been pending for almost two years, stating that absent extraordinary circumstances, the case would not be continued again. The court reaffirmed its grant of Mother's request for reasonable ADA accommodations and reaffirmed it would proceed with an evidentiary hearing on February 15, 2023.

¶11         On January 9, 2023, Father's counsel sought to reschedule the deposition, and after receiving no response from Mother, noticed her deposition for February 6, 2023. Mother failed to appear.

         **C.**    **The Court Proceeded with Trial on February 15, 2023, and March 3, 2023.**

4

¶12 On January 31, 2023, Mother moved to continue the February 15, 2023 evidentiary hearing, arguing an attorney she recently hired ceased representing her. The court denied this motion. On February 11, 2023, Father moved to dismiss Mother's Petition to Modify Spousal Maintenance.

¶13 On February 15, 2023 and March 3, 2023, the court held an evidentiary hearing regarding the issues on remand. Mother continued asserting that she required ADA accommodations. The court clarified that it granted her request to be accommodated, but that Mother did not request a virtual appearance, which she belatedly raised at the hearing, and had never made any formal requests for particular accommodations.

¶14 The court heard testimony from Father's expert witness, Daniel Riley, an attorney who valued Father's military pension. Riley explained the process of valuation and determined Mother's share of the military pension was $5,904.84. Mother cross-examined Riley but did not present any expert testimony of her own. On the second hearing day, Mother testified she was unable to get accurate data about Father's pension from his counsel. Mother also admitted the numbers she used to calculate an estimate were not accurate, leading the court not to admit her exhibit.

¶15 Father briefly testified as to the student loan debt, asking the court to treat $1,651.92 as owed to him. Mother did not cross-examine Father. She testified that the student loan debt allocation did not consider interest. Mother also testified as to childcare expenses and that Father claimed charges for the child's full day of preschool, when he only went for half a day. Mother also testified her income decreased over the years.

¶16 As to child support, an Assistant Attorney General appeared and explained that the child support guidelines did not support Mother's position, and that it was at the court's discretion to use the 2018 Guidelines, rather than the 2022 Guidelines, if it found good cause to do so.

¶17 Father testified as to the appropriate levels of retroactive child support, including his income, insurance, and childcare expenses he believed should be included in the child support worksheet.

### D. The Court Ruled For Father on Each Contested Issue.

¶18 In April 2023, the court ruled for Father on each contested issue. The court ordered retroactive child support and entered a judgment against Mother for $1,358.00. The court noted that while Mother continued to argue about Father's income, the prior appeal resolved that Father's income was supported by the record, and Mother provided no admissible

evidence on remand that Father's income was inaccurate. The court opted to utilize the 2018 Guidelines rather than the 2022 Guidelines, but was silent about why it did so or whether it had good cause to do so.

**¶19**         Regarding student loan disbursement, the court ordered Father owed Mother $1,651.92 as an offset to the loans paid during their marriage. Given that Mother owed Father an equalization payment and had made no payments on it since the decree, the court found it just to reduce the owed balance of Mother's equalization payment to Father by the $1,651.92.

**¶20**         The court adopted Father's valuation of Mother's interest in Father's military pension as $5,904.84, using this amount as well to reduce Mother's equalization payment. The court reasoned Father presented an expert witness, and Mother's cross examination of this witness were "centered around calculations that were not applicable to [Father's] pension plan" and Mother called no witness or provided any evidence that showed Father's expert was wrong.

**¶21**         The court granted Father's request for a portion of his reasonable attorneys' fees and costs due to Mother's behavior which prolonged the matter over a span of two years and two judicial officers. The court also dismissed Mother's Petition to Modify Spousal Maintenance, ultimately awarding Father $16,475 of reasonable attorneys' fees and costs related to the attempted depositions of Mother and the filing of Father's Motion to Dismiss. The court noted the "tremendous amount of motion practice related to a very simple issue; Mother's deposition," and how Father's counsel tried to depose Mother for a year, and how Mother's behavior frustrated her first deposition. The court also cited Mother's failure to sit for deposition despite the court's many warnings that her refusal to participate could lead to a dismissal of her petition.

**¶22**         Mother appealed. We have jurisdiction. A.R.S. § 12-2101(A)(1), Ariz. Const. art. 6, section 9.

## DISCUSSION

¶23 Mother argues the court abused its discretion by denying her request for a continuance and claimed ADA accommodations, which she argues deprived her of the opportunity to be heard and the right to a fair trial. Mother also argues the court incorrectly resolved child support, the student loan and military pension offsets, and by awarding Father attorneys' fees.

¶24 As a preliminary matter, Mother's opening brief does not consistently comply with ARCAP 13(a)(7), which provides an appellant's opening brief requires "citations of legal authorities and appropriate references to portions of the record on which the appellant relies." *Id.* Father argues these deficiencies justify dismissing Mother's appeal. Despite deficiencies in portions of Mother's opening brief, we elect to address her issues. *See Clemons v. Clark*, 101 Ariz. 413, 414 (1966).

I.     **The Court Did Not Abuse its Discretion in its Handling of Requests for Continuance and Accommodation, or Because the Record Contains Brief Gaps in Transcription.**

    A.     **The Court Did Not Abuse its Discretion in Denying Mother's Last Two Requests for Continuances.**

¶25 Mother argues the superior court abused its discretion by denying her last two requests for continuances, after granting others. We review the court's decision for abuse of discretion. *See Henderson v. Henderson*, 241 Ariz. 580, 589 ¶ 29 (App. 2017).

¶26 The superior court acted within its discretion when it denied Mother's request to continue trial in December 2022. As it then reminded the parties, the case had "been delayed unnecessarily for far too long" and the court had only "reluctantly continued the case" in October 2022 because Mother said she was too ill to proceed with trial, before finding "additional delay was not necessary" because "Mother was well enough to participate in a staycation just prior to the trial."

¶27 The superior court likewise acted within its discretion by denying Mother's January 2023 Motion to Continue. By then, both parties had submitted pretrial statements and were "ready to move forward." While Mother's motion was premised on the withdrawal of a recently hired attorney, Mother generally proceeded without counsel. Mother had three lawyers withdraw, and after the court granted a continuance in October 2022, Mother waited until December 2022 to hire the third counsel, who

soon withdrew. Given Mother's many chances to proceed through counsel and the long time afforded to her to find counsel throughout this case, denying her last request for continuance was no abuse of discretion. *See Encinas v. Mangum*, 203 Ariz. 357, 359 ¶ 10 (App. 2002) (due process is satisfied in civil case if litigant has been given the opportunity to either hire an attorney or represent self).

### B. The Court Did Not Abuse its Discretion in its Handling of Mother's Inchoate Requests for Accommodation.

**¶28** Mother argues that she was denied a fair hearing because she did not receive ADA-mandated accommodations. Mother's argument fails because she never requested specific ADA accommodations. She moved to preclude her own deposition, asking without particularity that "all requests for disability accommodations as protected by the ADA should be respected." But when the court ordered that Mother be accommodated during any scheduled deposition, Mother never complied with the court's order to tell Father what ADA accommodations she required. And while the court approved Mother's request for reasonable accommodations at an upcoming evidentiary hearing, Mother's request was general and vague, asking for accommodations "in the future whenever possible."

**¶29** Mother also asserted that the ADA required the court to appoint counsel for her, but provided no authority for this argument, thus waiving it. *See* ARCAP 13(a)(7). And while Mother cited a statute suggesting that law offices must be ADA-compliant, she neither explained nor cited authority explaining how that made her request for a virtual deposition an ADA accommodation. Finally, the section of Mother's brief concerning ADA accommodations lacks appropriate citations to the record, thus waiving these arguments as well. *See id.* The court did not err in omitting to provide accommodations Mother failed to request, or which were not accommodations in the first place.

### C. Mother's Claim That Gaps in Transcription in the Record Suggest an Abuse of Discretion Are Incorrect.

**¶30** Mother's argument that gaps in transcription give rise to error likewise fails. Under ARCAP 11(g), it was Mother's responsibility to seek to correct any supposed gaps in transcripts. ARCAP 11(g)(2) ("If any difference arises about whether the record accurately discloses what occurred in the superior court, the difference must be submitted to and settled by the superior court and the record conformed accordingly."). And while a few passages of testimony in this record read "not recorded" or

"indiscernible," Mother fails to develop any argument that such gaps prejudiced her. *See Polanco v. Indus. Comm'n of Ariz.*, 214 Ariz. 489, 491 ¶ 6 n.2 (App. 2007) (concluding plaintiff's argument was waived because plaintiff cited no relevant supporting authority and did not develop it). Mother's claim of error lacks merit.

## II. The Court Did Not Err in How it Resolved a Student Loan Debt Offset Payment, Divided Father's Military Pension, and Awarded Attorneys' Fees.

### A. The Court Did Not Abuse its Discretion in Ordering the $1,651.92 Deducted from the Equalization Payment Mother Owes Father.

**¶31** Mother asserts the court erred because she left the marriage with $256,363.08 of student loan debt while Father lacked such debt. Mother develops no argument that this allocation of debt represented error in her divorce decree, thus waiving any such argument. *See* ARCAP 13(a)(7). More to the point, Mother's assertion about student loan debt misunderstands our remand to the superior court. In our prior decision, we affirmed a ruling that Father owed Mother $1,651.92 to equalize what their marital community paid toward their respective student loan debts. *Lavicka*, 1 CA-CV 19-0660 FC, at *4 ¶ 15. On remand, the court treated Father's debt as paid by reducing the amount of equalization payment Mother owes to Father by $1,651.92. Mother makes no argument that this offset was error. *See MacMillan v. Schwartz*, 226 Ariz. 584, 591 ¶ 33 (App. 2011) ("Merely mentioning an argument in an appellate opening brief is insufficient."). It was not.

### B. The Court Did Not Abuse Its Discretion by Determining Mother's Share of Father's Military Pension Was $5,904.84, Or by Reducing Her Equalization Payment by That Sum.

**¶32** Mother argues the court erred when it valued and divided Father's military pension. Because the court has "broad discretion to equitably divide assets and liabilities . . . we review the court's ruling for an abuse of discretion." *Hoobler v. Hoobler*, 254 Ariz. 130, 137 ¶ 13 (App. 2022) (citing *In re Marriage of Flower*, 223 Ariz. 531, 535 ¶ 14 (App. 2010)).

**¶33** Riley, Father's expert, testified the lump sum cash value of Mother's portion of the divided military pension was $5,904.84, explaining how he derived that figure, and rebutting Mother's positions. While Mother argues she did not agree to Riley's valuation, she presented no expert to refute him, and no admissible evidence of the pension's value.

Given the court's broad discretion to determine value, *Hoobler*, 254 Ariz. at 138 ¶ 14, there was no abuse of that discretion here.

### C.     The Court Did Not Abuse its Discretion By Awarding Father Attorneys' Fees.

**¶34**      Mother argues the court abused its discretion by awarding Father attorneys' fees. The court may award attorneys' fees under A.R.S. § 25-324 after considering the parties' financial resources and the reasonableness of their positions throughout the proceedings. *See Breitbart-Napp v. Napp*, 216 Ariz. 74, 83 ¶ 36 (App. 2007). We review an award of attorneys' fees for abuse of discretion. *Mangan v. Mangan*, 227 Ariz. 346, 352 ¶ 26 (App. 2011). We review the court's findings in the light most favorable to upholding the award and will affirm if any reasonable evidence in the record supports the decision. *Mitchell v. Mitchell*, 152 Ariz. 317, 323 (1987).

**¶35**      Applying those standards, this is not a close question. Father prevailed on almost every issue Mother raised, demonstrating the substantive merit of his positions. Meanwhile, Mother conducted the litigation unreasonably. She postponed her deposition by almost a year by claiming difficulties with the legal process. The court found her assertions meritless, because Mother failed to identify necessary accommodations, comply with discovery, or attend scheduled depositions or hearings (despite taking a staycation just before a scheduled hearing Mother argued she could not participate in due to her health). The court noted Mother "frustrated" her first deposition and repeatedly warned her that refusing to comply with discovery might result in dismissing her Petition for Spousal Maintenance.

**¶36**      The court considered the financial disparity between Mother and Father but found Mother's actions throughout the proceedings warranted an award of attorneys' fees because Mother "unnecessarily prolonged this case." The court likewise found the issues on remand were simple and should not have required prolonged litigation. These findings well support the court's exercise of its discretion to award Father attorneys' fees.

### III. The Court Did Not Abuse its Discretion By Dismissing Mother's Petition to Modify Spousal Maintenance, Given Her Failure to Cooperate in Sitting for Deposition Despite Repeated Warnings.

¶37　　　　Mother argues the superior court abused its discretion by dismissing her Petition to Modify Spousal Maintenance for failure to cooperate in discovery. *See Roberts v. City of Phoenix*, 225 Ariz. 112, 119 ¶ 24 (App. 2010) ("We will affirm a trial court's imposition of sanctions for discovery violations, including entry of default judgment, unless the record reflects a clear abuse of discretion."). We treat "[d]ismissal as a sanction . . . to be exercised with great caution." *Nesmith v. Superior Court*, 164 Ariz. 70, 72 (App. 1990). But the family court rules authorize dismissal of claims in whole or in part for failure "to obey an order or to provide or permit discovery." Ariz. R. Fam. Law P. 65(b)(1)(E).

¶38　　　　Here, Mother had already failed to sit for a noticed deposition in March 2022 when the superior court began a series of warnings to her to participate in discovery. In September 2022, the court warned Mother that, because she was previously admonished to cooperate, if she did not sit for deposition, the court would "most likely" dismiss her Petition to Modify Spousal Maintenance. Later that month, the court found Mother had "frustrated" her initial deposition and wrote "Mother's refusal to participate in a second deposition may result in the Court dismissing her Petition to Modify." Despite these repeated warnings and orders from the court, Mother chronically and continually refused to cooperate in what was her own proceeding to modify her decree. Given that prologue, the court dismissed her Petition to Modify Spousal Maintenance.

¶39　　　　Given the court's patience and copious warnings, and the court's and counsel's efforts to work with Mother, declining to hear her request to modify her spousal maintenance was well within the court's sound discretion. Ariz. R. Fam. Law P. 65(b)(1)(E); see *Smith v. Olsen*, No. 1 CA-CV 22-0565, 1 CA-CV 23-0041 (consolidated), 2024 WL 2763440, at *4-5 ¶¶ 24-25 (App. 2024). As in *Smith*, the sanction of dismissing a claim was appropriate because it was tailored to, and proportional to, the discovery the sanctioned party refused to provide. *Id.* Put another way, Mother's refusal to cooperate in discovery prevented Father from rebutting her claim she needed more spousal support. This in turn made it necessary to prevent her from seeking relief Father could not oppose in the way the rules allow. *Id.*

**IV.** **The Court Abused Its Discretion in Its Calculation of Retroactive Child Support Because the Court Neither Used the 2022 Guidelines Nor Found Good Cause Not to Do So.**

**¶40**       Mother argues the court abused its discretion in ordering retroactive child support, not admitting evidence concerning child support, and not following the 2022 Guidelines. We review child support awards for an abuse of discretion. *Sherman v. Sherman*, 241 Ariz. 110, 112 ¶ 9 (App. 2016). The court abuses that discretion when there is an error of law, or if the record does not support its decision. *Birnstihl v. Birnstihl*, 243 Ariz. 588, 590 ¶ 8 (App. 2018). We accept the court's factual findings "unless clearly erroneous and review de novo the trial court's interpretations of the Arizona Child Support Guidelines, A.R.S. § 25-320 ("Guidelines")." *Hoobler*, 254 Ariz. at 140 ¶ 22. "A finding of fact is not clearly erroneous if substantial evidence supports it, even if substantial conflicting evidence exists." *Castro v. Ballesteros-Suarez*, 222 Ariz. 48, 51-52 ¶ 11 (App. 2009) (quoting *Kocher v. Dep't of Revenue of Ariz.*, 206 Ariz. 480, 482 ¶ 9 (App. 2003)) (internal quotations omitted). We also do not reweigh conflicting evidence or the court's credibility assessments. *Lehn v. Al-Thanayyan*, 246 Ariz. 277, 284 ¶ 20 (App. 2019). "We interpret the Guidelines consistently with [their] language and purpose: the 'reasonable needs of the children and the ability of the parents to pay.'" *Id.* (quoting *Hetherington v. Hetherington*, 220 Ariz. 16, 23 ¶¶ 26-27 (App. 2008)).

**¶41**       *First*, Mother argues the 2022 Guidelines should have been used to calculate retroactive child support from April 2017 to August 2019. The 2022 Guidelines apply to "[a]ll Child Support Orders entered after January 1, 2022 . . . whether they be original orders or modifications of pre-existing orders," unless the court determines there is good cause not to do so. *See* Guidelines § XVII(A) (2022). The superior court's order is a Child Support Order within that definition, as it determines that Mother should have paid Father: (a) $522 of child support from April 2017 to December 2017; (b) $836 of child support from January 2018 to July 2019; and (c) $64 per month from August 2019 to the end of the case.

**¶42**       Despite entering a Child Support Order as defined in the guidelines, the court did not make a finding of good cause or explain why it used the 2018 guidelines. Mother raised the issue in her pretrial statement, as well as during her testimony. Because Mother adequately raised the issue and the court did not make the finding of good cause required to permit use of the 2018 Guidelines, it was error to use them. We remand for the court to consider whether there is good cause to use pre-

2022 guidelines, and then to apply whichever guidelines are proper in the circumstances of this case.

**¶43** *Second*, Mother argues the court abused its discretion by not admitting two pieces of evidence concerning child support. Mother argues Exhibit 23, a group of child support worksheets, was improperly not admitted. But Mother did not move to admit Exhibit 23. Mother also argues Exhibit 25, a group of Father's bank statements, was not admitted because she ran out of time at trial. The superior court has broad discretion in fashioning time limits in proceedings. *Volk v. Brame*, 235 Ariz. 462, 468 ¶ 20 (App. 2014). The superior court did not abuse its discretion by not admitting these exhibits.

**¶44** *Third*, Mother makes a number of assertions about Father's actual income and child care expenses during 2017 and 2018, to argue the court erred in its calculation of child support. But in making these arguments, Mother relies on her trial Exhibit 23, which was not admitted. Mother's other arguments about retroactive child support are not cited to particular record material. *See* ARCAP 13(a)(7). For these reasons, we reject Mother's claims of error. *See id.; Ritchie v. Krasner*, 221 Ariz. 288, 305 ¶ 62 (App. 2009).

## CONCLUSION

**¶45** We affirm on all issues except for the calculation of child support, and remand for the superior court to determine whether there is good cause to use pre-2022 guidelines, and then to apply whichever guidelines are proper. Having considered the parties' financial positions and the reasonableness of their positions, we award Father his attorneys' fees and costs incurred on appeal pursuant to A.R.S. § 25-324, other than those incurred arguing for the application of the 2022 Guidelines, subject to his compliance with ARCAP 21.

**P E R K I N S, J.,** specially concurring:

**¶46** I concur in the preceding decision in full. I write separately to note a concern with application of the 2022 Guidelines in the context of these facts. As identified in ¶ 40–41, the 2023 order determined that Mother should have paid Father (a) $522 of child support from April 2017 to December 2017; (b) $836 of child support from January 2018 to July 2019; and (c) $64 per month from August 2019 to the end of the case. The amounts in (a) and (b) thus cover bounded time periods before 2022, and the court entered judgment against Mother for those amounts.

¶47 Father argued on appeal only that we should assume the superior court had good cause not to apply the 2022 Guidelines, despite its silence on that question. He did not explain why good cause existed or argue that it would be improper to apply the 2022 Guidelines to these earlier time frames. As a result, I do not depart from this court's decision to remand for the superior court to evaluate the good cause question.

¶48 In my opinion, the question remains whether it is appropriate to apply the 2022 Guidelines retroactively, particularly when, as here, the relevant periods of time occurred—and concluded—well before 2022. As noted above, the 2022 Guidelines apply to "[a]ll Child Support Orders entered after January 1, 2022, . . . whether they be original orders or modifications of pre-existing orders" in the absence of the parties' agreement otherwise, a good cause finding by the court, or entry of a default judgment. A.R.S. § 25-320 app. § XVII.A. This language is prospective and contemplates forward-looking obligations. A court's authority to alter a financial obligation retroactively by looking to guidelines that did not exist at the relevant time strikes me as concerning. Particularly when the statutory text does not explicitly use retroactivity language. *See* A.R.S. § 1-244 ("No statute is retroactive unless expressly declared therein.").

¶49 In my view, the superior court's good cause evaluation under Section 25-320 regarding application of pre-2022 Guidelines should consider the retroactivity limitation in Section 1-244.

