NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

LENA MARIA MATIE, *Petitioner/Appellee,*

*v.*

SHANNON MICHAEL MEEHAN, *Respondent/Appellant.*

No. 1 CA-CV 24-0444 FC

FILED 01-30-2025

Appeal from the Superior Court in Mohave County
No.  L8015DO201307322
The Honorable Megan A. McCoy, Judge

**AFFIRMED**

COUNSEL

Berkshire Law Office, PLLC, Tempe
By Keith Berkshire, Alexandra Sandlin
*Counsel for Respondent/Appellant*

---

**MEMORANDUM DECISION**

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Brian Y. Furuya and Judge Maria Elena Cruz joined.

---

**C A M P B E L L**, Judge:

¶1 Shannon Meehan (Father) appeals the superior court's order increasing his child support obligation and giving his daughter (Katie[1]) discretion over when he can exercise his parenting time. For the following reasons, we affirm.

## BACKGROUND

¶2 Lena Matie (Mother) and Father married in 1999 and had Katie in 2008. In 2013, Mother filed for dissolution of marriage. In 2015, the court entered a dissolution decree, awarding the parties joint legal decision-making, designating Mother as the primary residential parent, and awarding Father parenting time every Wednesday to Thursday and every other weekend. Father was ordered to pay Mother $800 per month in child support.

¶3 In 2018, Mother petitioned to modify legal decision-making and parenting time. Father counter-petitioned, seeking to modify parenting time. The court issued an order affirming joint legal decision-making, modifying parenting time to a week on, week off equal schedule, and reducing Father's support obligation to $42 per month.

¶4 In December 2023, Mother petitioned for sole legal decision-making, increased parenting time, and increased child support. She requested temporary orders granting her sole legal decision-making and limiting or suspending Father's parenting time. Mother alleged in part that Katie had been molested at Father's home by Father's former girlfriend's son, and as a result, Katie now experiences symptoms of post-traumatic stress disorder (PTSD) while at Father's home. Katie has been diagnosed with PTSD and is now receiving counseling twice a month.

¶5 After a hearing in January 2024, the court issued temporary orders awarding Mother sole legal decision-making and affirming the

---

[1] We use a pseudonym for the minor child to protect her anonymity.

alternating-week parenting time schedule but allowing Katie to decide whether to spend the night with Father. Since January, she has not spent the night at Father's home.

¶6            In March 2024, the court conducted an in camera interview with Katie. She explained that Father's former girlfriend and her two sons used to live in Father's house. When Katie was about six years old, one of the sons started coming into her bedroom and sexually abusing her. She repeatedly reported the abuse to Father, but he did nothing about it. Katie reported that the abuse continued for around five years until the girlfriend and sons moved out. Katie explained that she feels uncomfortable sleeping in Father's home because of the abuse. Also, on the nights she is supposed to spend with Father, he usually works late, and she often ends up alone in his office. Even when they are together, Father does not make an effort to spend quality time with her. Katie asked to stay at Mother's house permanently, but that she also be allowed to spend time with Father, in case he ever makes time.

¶7            At the modification hearing, Mother testified that Katie informed her of the abuse in 2021 after the girlfriend and her sons had moved out. Katie told Mother that she experiences flashbacks when she is in her room at Father's house. Katie told Mother that Father works late "quite frequently" on nights she is scheduled to spend with him. Katie told Mother that Father confronted her about the in camera interview, made her read the entire transcript to him, and said: "Why don't you just have your stepdad Chris walk you down the aisle."

¶8            Father testified that nothing happened in his house that he would consider molestation. He explained that Katie informed him that the boy had pulled her pants down, but after investigating, he determined that it was nothing more than a "school prank." He set up surveillance cameras, prohibited the children from entering each other's rooms, and required their bedroom doors to stay open unless they were changing. Father testified that Katie never disclosed any other incidents of inappropriate contact. Father stated that he is concerned about Mother allowing Katie to get piercings, stay out late, and post inappropriate content on social media.

¶9            Father owns and operates an auto repair shop, tow service, and locksmith service. Father submitted an affidavit of financial information (AFI) reporting a monthly "salary/wages" of $867 and expenses of $15,411, of which the business pays $6,359, and his fiancé pays $500. Father asked the court to attribute him $5,000 in monthly income to calculate child support.

¶10        The court issued an order modifying legal decision-making, parenting time, and child support. The court granted Mother sole legal decision-making. The court found that Father having frequent contact with Katie would endanger her mental and physical health because Father "has not supported [Katie's] healing from the trauma that occurred in his care and appears unable to listen to or respect [Katie] as she articulates her own needs." The court also found that Katie, now 16, "has stated very clearly she does not feel a priority or engaged with Father, and instead of ensuring she does, he punished and shamed her for her statements to the Court." The court ordered Mother to serve as the primary residential parent and granted Father parenting time "[i]f [Katie] chooses," clarifying that Katie "shall not be forced to attend any parenting time with Father and may choose not to respond to Father's phone calls or texts, but also must be permitted to if she chooses."

¶11        The court found that Father's monthly income was $8,600 based on "the benefits from AFI and actual income." It attributed Father zero days of parenting time because Katie "has currently refused parenting time with her Father." Accordingly, it ordered Father to pay $927 per month in child support. Father timely appealed the parenting time and child support orders.

**DISCUSSION**

¶12        Father argues that the superior court erred because it (1) ceded its authority to determine parenting time to a minor child, (2) failed to establish a specific parenting time schedule, (3) attributed Father a higher monthly income than the evidence supports and, (4) attributed Father zero days of parenting time in calculating child support. We review parenting time and child support orders for an abuse of discretion. *Nold v. Nold*, 232 Ariz. 270, 273, ¶ 11 (App. 2013) (parenting time); *Hetherington v. Hetherington*, 220 Ariz. 16, 21, ¶ 21 (App. 2008) (child support).

**I.        Parenting Time**

¶13        Father argues that by granting Katie discretion to decide whether she spends time with Father, the court violated its obligation to issue a parenting time order that is in Katie's best interests. "The court shall determine . . . parenting time . . . in accordance with the best interests of the child." A.R.S. § 25-403(A). "The child's best interests 'are for the court alone to decide' and not delegable to another party." *Mesa v. O'Connor*, 1 CA-CV 24-0414, slip op. at *5, ¶ 16 (Ariz. App. Jan. 28, 2025) (citation omitted).

¶14 Father analogizes this case to *Nold v. Nold*. In *Nold*, the trial court deferred to the custody evaluator's report in determining custody and thereby "abdicated its responsibility to decide the best interests of the children, and therefore abused its discretion." 232 *Ariz.* at 273–74, ¶ 14. However, this court recently held in *Mesa v. O'Connor* that if the trial court "weighed the evidence, analyzed all relevant [best-interests] factors, noted those on the record, and entered the parenting order," it does "not err by assigning Father parenting time at Child's discretion." 1 CA-CV 24-0414, slip op. at *6–7, ¶ 19. Like in *Mesa*, the court here held an evidentiary hearing, made findings on the record for all the relevant A.R.S. § 25-403 factors, and weighed those factors in determining that it is in Katie's best interests to decide whether she spends time with Father. *Id.* The court's decision to leave Father's parenting time to Katie's discretion is supported by the evidence of Father and Katie's tenuous relationship and the best-interests factors. *See* A.R.S. § 25-403.

¶15 Father next argues that the parenting plan violated A.R.S. § 25-403.02 because it did not maximize parenting time for each parent and failed to provide a specific schedule of parenting time. Under § 25-403.02(B), "[c]onsistent with the child's best interests . . . the court shall adopt a parenting plan that . . . maximizes [the parents'] respective parenting time." And § 25-403.02(C)(3) provides that "[p]arenting plans shall include . . . [a] practical schedule of parenting time for the child, including holidays and school vacations." Even so, "the lodestar for parenting time is not maximizing parenting time, but focusing on what parenting time arrangement is in the child's best interests." *Mesa*, 1 CA-CV 24-0414, slip op. at *7, ¶ 20; *see* A.R.S. § 25-403.02(B) ("Consistent with the child's best interests . . . ."). "In some cases, the statutorily mandated parenting time plan will not include a specified time for a parent if doing so is not in the child's best interests." *Mesa*, 1 CA-CV 24-0414, slip op. at *7, ¶ 21.

¶16 Here, based on the evidence of Father and Katie's dysfunctional relationship, the court properly could conclude that it was in Katie's best interests to choose whether to see Father. *See id.* at *8, ¶ 22 ("Given the record of hostility between Father and Child, the superior court did not abuse its discretion by" concluding that it was in "Child's best interests that Father have no specific parenting time and instead let Child determine whether he wanted to spend time with Father.").

¶17 Father claims that the "order does not implement a specific schedule." However, § 25-403.02(C)(3) does not require a "specific" schedule; it only requires a "practical schedule." Father does not explain

why Katie having discretion over parenting time would be impractical, and nothing in the record suggests that it would be. Therefore, the parenting plan was not an abuse of the court's discretion.

## II.     Child Support

¶18          Father argues that the $8,600 the court attributed to him in monthly income is unsupported by the record. He claims that "[e]ven utilizing the listed amounts in [his] AFI, [his] maximum monthly income totaled only $7,726 per month" and "[t]here was no evidence to support a higher amount." We disagree.

¶19          In Father's AFI, he listed $15,411 in total monthly expenses. He stated that the business pays $6,359 and his fiancée pays $500 of his monthly expenses. Both contributions constitute income for purposes of calculating child support. *See* A.R.S. § 25-320 app. (Guidelines) §§ II.A.1.f. (including "[e]xpense reimbursements or benefits a parent receives in the course of employment, self-employment, or the operation of a business"), II.A.1.b. (including "recurring gifts"); *see also Cummings v. Cummings*, 182 Ariz. 383, 387 (App. 1994) ("[I]n considering the equities affecting child support, a court may still take into account any regular and substantial benefits a parent receives from remarriage.").

¶20          Based on Father's AFI, it is unclear how he pays the other $8,552[2] in monthly expenses, considering his self-disclosed monthly salary is only $867. Father's own testimony at the modification hearing shed some light on this discrepancy. He conceded that his fiancée actually pays "3,000 to 4,000" per month toward his living expenses, not $500 as stated in his AFI. He also stated that he pays the business' expenses with a credit card and "use[s] the money that comes in from customers to pay the other bills." Because evidence was presented that his fiancée and the business were paying more of Father's living expenses than the AFI indicates, the court did not abuse its discretion by attributing Father $8,600 in monthly income, rather than the $7,726 listed in his AFI.

¶21          Father argues that the court erred by attributing him zero days of parenting time in its child support calculation. The Guidelines require trial courts to calculate parenting time based on "a court order, a parenting plan, by the parents' expectation, or by historical practice." Guidelines § V.C. The court found that Katie "has currently refused parenting time with her Father, and therefore no days are attributed." The

---

2          $15,411 – ($6,359 + $500) = $8,552

court's parenting plan allowed Katie to spend any time with Father or not, and since the January 2024 order, Katie refused to spend the night at Father's home. Based on the parenting plan and Katie's historical practice, the court was within its discretion to attribute Father zero days of parenting time.

**CONCLUSION**

¶22 We affirm the superior court's parenting time and child support orders, and we deny Father's requests for attorneys' fees and costs on appeal.

